# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LACEDRIC WILLIAM JOHNSON,<br><br>            Plaintiff,<br><br>     v.<br><br>SCOTT FRAUENHEIM, et al.,<br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 1:18-cv-01477-AWI-BAM (PC)<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO ADD A PARTY<br><br>SCREENING ORDER GRANTING PLAINTIFF LEAVE TO FILE AN AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED ON COGNIZABLE CLAIMS<br><br>(ECF Nos. 1, 7)<br><br>**THIRTY (30) DAY DEADLINE** |

Plaintiff LaCedric William Johnson is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. On October 26, 2018, Plaintiff initiated this action by filing a complaint with this Court. (ECF No. 1.) Before the Court could screen Plaintiff's complaint, Plaintiff filed a motion to add a party. (ECF No. 7.)

Plaintiff's motion to add a party, (ECF No. 7), is granted. See Fed. R. Civ. P. 15(a) (a party may amend once as a matter of right, but must seek leave of court for further amendments). Therefore, R. Newton is added as a defendant in this action and the Court will evaluate the allegations made against R. Newton.

Plaintiff's complaint, filed on October 26, 2018, is currently before the Court for screening. (ECF No. 1.)

///

**I.      Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor.  Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012).  To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678–79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).  The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

**II.      Summary of Plaintiff's Allegations**

Plaintiff is currently housed at California State Prison, Solano.  Plaintiff alleges that the events at issue took place at Pleasant Valley State Prison ("PVSP").  Plaintiff names the following defendants: (1) Scott Frauenheim, Warden of Pleasant Valley State Prison; (2) Correctional Sergeant J. Benavides; (3) Correctional Officer J. Bejinez; (4) Correctional Officer S. Deshazo; (5) Correctional Officer D. Erickson; (6) Correctional Officer S. Espinoza; (7) Licensed Vocational Nurse R. Hansen;

2

(8) Correctional Officer J. Hill; (9) Registered Nurse Ryuan Hoggard; (10) Correctional Officer C. Kennedy; (11) Correctional Officer W. Leon; (12) Licensed Vocational Nurse M. Liebold; (13) Correctional Officer S. Lopez; (14) Correctional Officer G. Luna; (15) Correctional Officer M. Ramirez; (16) Correctional Officer A. Salas; (17) Correctional Officer M. Santos; (18) Licensed Vocational Nurse M. Sharp; (19) Correctional Officer E. Trinidad; (20) M. George[1]; and (21) R. Newton.

Plaintiff alleges as follows: Custody staff at PVSP have a longstanding practice of using pat-down and unclothed body searches to initiate assaults against targeted inmates as a means of intimidation, harassment, and retaliation resulting in false 115 Rules Violation Reports alleging "battery of peace officer" and disciplinary sanctions, i.e., administrative segregation placement, Security Housing Unit term, increased classification score, forfeiture of good-time/worktime credits, possible transfer and referral to the District Attorney for prosecution. At the time of this incident, Plaintiff fit the criteria of a "targeted inmate" because he was actively pursuing a conversion action in the Superior Court of California, County of Fresno against two PVSP prison guards who intentionally discarded legal files to five active cases, religious property, and personal property.

On January 29, 2014, at 0930 hours, Facility Bravo (Facility B) yard Defendant Benavides was conducting a controlled yard release with random pat-down searches being conducted by approximately ten correctional officers. During the Building 1 yard release, Plaintiff forgot his identification card in his cell. Since inmates must carry their identification card on their person, Plaintiff summoned Defendant Newton, the Building 1 Control Tower Officer, for an unlock, explaining that he had forgotten his identification card in his cell and requesting an unlock to gain access. Defendant Newton denied Plaintiff's request.

Defendant Santos, the Building 1 First Tier Floor Officer, ordered Plaintiff to "strip-out" in the lower B section shower. Plaintiff took off all of his clothes except for his boxers, gave them to Defendant Santos and Defendant Leon, the Second Tier Officer, along with his legal folder, and stood

---

[1] Plaintiff does not identify M. George as a defendant in the complaint's caption or list of defendants. However, the Court will screen the allegations made against M. George in Plaintiff's complaint.

waiting until the search of his clothing and legal folder was completed. Defendant Santos approached the shower and told Plaintiff, "Give me your boxers," just as Defendant Luna and Defendant Espinoza, a female officer, entered the building and looked towards the shower and the ongoing search. (ECF No. 1, at 7.) Plaintiff stated, "One moment out of respect for the women, I'm Muslim." (Id.) Defendant Santos then opened the shower gate and barked "Cuff Up! Cuff Up! Get Down!" (Id.) When Plaintiff asked what he had done, Defendant Santos emptied a canister of O.C. pepper spray directly in Plaintiff's face, blinding him. Plaintiff stumbled blindly to the back of the shower, turned the water on, and rinsed his eyes, with his back to Defendant Santos. Defendant Santos then entered the shower and began striking Plaintiff across the knee of his left leg with rapid, hard successive blows with his MEB expandable baton, which caused Plaintiff's surgically repaired knee to weaken, become painful, and a wound on the knee to open up and bleed. When Plaintiff turned around, Defendant Santos left the shower.

At that point, Defendant Leon emptied a canister of O.C. pepper spray into Plaintiff's face, blinding Plaintiff and causing Plaintiff to inhale mace through his nose, choking Plaintiff, as Defendant Leon yelled for Plaintiff to "Get the fuck down!" (Id.) Plaintiff turned, placed his head under the water to rinse his eyes, due to the burning and blindness, and attempted to comply with the order to prone out on the shower, but pain from the injured knee and leg made compliance difficult. Defendant Santos entered the shower for a second time and began beating Plaintiff across the arm, wrist, elbow, and body with his MEB baton. When Plaintiff stood up and raised his arms to protect himself from blows to his head, Defendant Santos ran out of the shower again.

As Plaintiff was being beaten by Defendant Santos, Defendant Espinoza made a call over her radio of a disturbance in Building 1. All inmates were ordered down. Defendant Benavides and approximately 10 other officers who were outside of the building entered the building, waving batons and shaking up their canisters of O.C. pepper spray. The officers formed a skirmish line in front of the shower, yelling "Get down!" (Id. at 8.) Defendant Santos then sprayed Plaintiff in the face with another canister of O.C. pepper spray. Further, the officers who had responded to Defendant Espinoza's call also emptied numerous canisters of O.C. pepper spray directly into Plaintiff's face, further blinding, burning, and choking Plaintiff, as they yelled "Get down!" (Id.) As Plaintiff

attempted to prone out in a pool of pepper spray, Defendant Santos entered the shower for a third time and began beating Plaintiff across the arms and legs with his MEB baton. Defendant Santos then grabbed Plaintiff by the ankle and dragged Plaintiff out of the shower and onto the dayroom floor.

Defendant Hill and Defendant Salas then jumped on Plaintiff's back, causing pain, and both began punching Plaintiff in the face and head. Plaintiff's head bounced off of the concrete floor approximately three times. Out of fear, Plaintiff attempted to protect his left wrist, which was swollen, throbbing, and disfigured, by placing it under his torso. While Plaintiff was using his right arm to protect his head and face from punches to the head and face by Defendants Hill and Salas, Defendant Benavides grabbed his right hand and wrist and held it. Defendants Benavides, Luna, Lopez, and Salas were punching and pulling on Plaintiff's wrist, while yelling, "Stop resisting!" (Id. at 9.) At no time did any of the surrounding officers intervene to stop the beating of Plaintiff.

When an unknown officer began kicking Plaintiff in the genitalia, Plaintiff began twisting his hips, making his genitalia a moving target, to avoid further contact. Other officers began kicking and stomping Plaintiff's legs and torso until Plaintiff became weak. Defendant Kennedy continued kicking Plaintiff. Defendants Benavides, Hill, Lopez, Luna, and Salas continued punching Plaintiff and pulling on Plaintiff's harms. Defendant Hill stated: "He's screaming like a bitch." (Id.) Plaintiff's wrists were then cuffed behind his back, extremely tight. Defendant Benavides grabbed Plaintiff's ankles and Defendant Ramirez placed flex cuffs on Plaintiff's ankles, tightly, which dug into Plaintiff's flesh, causing bleeding and pain.

Medical staff were summoned. Defendants Hoggard, Hansen, Liebold, and Sharp brought a gurney. Defendants Benavides, Santos, and Ramirez lifted Plaintiff, placed Plaintiff in a stokes litter, and then placed him on the gurney. Defendant Salas took Plaintiff's boxer shorts off and placed the pepper-spray soaked underwear over Plaintiff's head, burning Plaintiff's face. Plaintiff was naked in the presence of Defendants Hansen, Liebold, Sharp, and Espinoza, all women. Nothing was placed over Plaintiff to cover his genitalia.

Defendants Bejinez and Trinidad then wheeled Plaintiff, naked, on the gurney across the yard in the presence of the inmate population, custody staff of both genders, and support services staff.

///

Plaintiff was taken to the Facility B medical clinic, where he arrived at approximately 0945 hours. Defendant Deshazo was the assigned medical triage coverage officer.

Defendants Bejinez and Trinidad lifted Plaintiff off of the gurney in the stokes litter and slammed Plaintiff to the ground in the holding tank. The already tight handcuffs that were under Plaintiff's body clicked even tighter, which caused the handcuffs to dig deeper into Plaintiff's injured wrist, flesh, and bone, causing excruciating pain. Plaintiff asked Defendant Deshazo to loosen, or remove, the cuffs and to summon medical staff for treatment. However, Defendant Deshazo stated "No. And shut up!" while Plaintiff was screaming in pain, hyperventilating, coughing, and sweating. Defendant Deshazo placed a spit mask hood over Plaintiff's head, in violation of CDCR's Department Operation Manual, which forbids placement of a spit hood on an inmate suffering from pepper spray exposure. Plaintiff was showing apparent signs of respiratory distress and weakness from the beating. Plaintiff was choking, gagging for air, hyperventilating, sweating, phlegm and mucus was sticking to the spit hood mask, which clogged up the mask and caused Plaintiff to suffocate and fight for air. Plaintiff's lungs are damaged by Valley Fever spores. Plaintiff was in and out of consciousness. Defendant Deshazo disregarded Plaintiff's pleas for help while the hand and flex ankle cuffs were cutting into Plaintiff's flesh, the spit hood was restricting the oxygen to Plaintiff's lungs and brain, Plaintiff was burning all over from excessive pepper spray, Plaintiff's head was throbbing, and Plaintiff was bleeding and swelling. Defendant Deshazo just ignored Plaintiff, even though he was within 10 feet of Plaintiff. At no time did Defendant Deshazo cover up Plaintiff's genitalia. Instead, Defendant Deshazo left Plaintiff hog-tied, naked, and suffering for an hour. In fact, Defendant Deshazo opened the door to medical and let another inmate in, who witnessed Plaintiff, naked and suffering on the floor.

All inmates were ordered to lock up for a yard recall over the PA system. Another inmate, who witnessed Plaintiff being wheeled across the yard naked, also witnessed the responding officers exit Building 1 high-fiving and fist bumping.

At approximately 1045 hours, Defendants Bejinez and Trinidad had a conversation with Defendant Benavides at the Facility B medical entrance. Then, Defendants Bejinez and Trinidad grabbed a gurney, placed Plaintiff on the gurney, and wheeled him, still naked, across the yard to the

gym for decontamination. Defendants Bejinez and Trinidad removed the spit mask. After one of the Defendants stated that the showers were not working, they left Plaintiff lying in the stokes litter on the gurney suffering and sat down and held a conversation among themselves. Defendant Benavides entered the gym told Defendants Bejinez and Trinidad to remove Plaintiff's cuffs, take Plaintiff out of the stokes litter, and place Plaintiff on the bench. Plaintiff could not hold himself up and was slumped over because he was weak and could not support himself with his injured arm, wrist, knees, or leg. Defendants Bejinez and Trinidad then just sat back down and resumed their personal conversation.

At that point, Gomez, who is not a defendant, entered the gym, assessed the situation, filled a bucket with water from a sink, and poured it over Plaintiff's head. After Gomez poured a second bucket of water over Plaintiff, Plaintiff requested that Gomez pour a third bucket of water over him because his penis was burning. Plaintiff informed Gomez that the burning was unbearable. However, Gomez stated that: "You'll be better off without water, water agitates the chemical." Plaintiff's eyes were never rinsed.

Defendant Hoggard then entered the gym, stopped approximately ten feet away from Plaintiff, wrote something down on a piece of paper, and exited the gym. Plaintiff assumed that Defendant Hoggard, who is a nurse, was going to return to provide medical care, but Defendant Hoggard did not. Instead, as soon as Defendant Hoggard exited the gym, Defendant Benavides entered the gym, told Defendants Bejinez and Trinidad to prepare Plaintiff for transport to Delta-4 ad-seg (administrative segregation) unit, and gave Plaintiff a pair of boxer shorts. Plaintiff was unable to put the boxer shorts on without assistance.

Defendant Hoggard's CDCR 7219 Injury/Assessment Medical Report of Injuries only indicated that Plaintiff had a scratch/abrasion on his left knee and O.C. pepper spray on his torso. Plaintiff asserts that this orchestrated plan of action between Defendants Benavides and Hoggard to minimize Plaintiff's documented injuries was done in order to isolate Plaintiff in ad-seg and to prevent Plaintiff from getting medical care, which would have opened up a serious investigation into excessive force and the completion of an excess force video deposition as required by prison regulations.

At approximately 1200 hours, Defendants Bejinez and Trinidad had to carry Plaintiff into the Delta 4 segregation unit by putting their shoulders under his arms in order to drag Plaintiff.

Plaintiff was found unresponsive in Cell #127 at 1600 hours by a Delta 4 unit officer. After officers entered the cell, Delta 4 unit medical staff, Licensed Vocational Nurse D. Hall was summoned. After Nurse Hall ascertained that Plaintiff's injuries were severe and his vitals were high, Nurse Hall made arrangements for Plaintiff to be taken to PVSP Correctional Treatment Center ("CTC"). Plaintiff's visible signs of injury were assessed and documents by Registered Nurse K. Bradley on a CDCR 7219 Injury/Assessment Report. Plaintiff was evaluated by Dr. Ola, given a shot for pain management, and then sent to Community Regional Medical Center in Fresno. Plaintiff was admitted to the hospital, monitored throughout the night, and then released on January 30, 2014.

On January 30, 2014, Plaintiff was housed at PVSP CTC for medical evaluation and monitoring. The physical signs of trauma to Plaintiff's head and body were more prominent. Plaintiff's eyes were black and blue, he had broken blood vessels in both eyes, his left wrist was deformed and swollen, he had a loss of feeling in his left hand, he had a numb and tingling sensation in his left extremities, a bruised left bicep and rib, his left knee was swollen with two lacerations, his left shin was swollen, he had a right inside ankle gash, an intense headache and pain all over his body, and his eyes and body were burning from pepper spray. Facility B. Captain A. Shimmins personally came to CTC, visually observed Plaintiff, issued Plaintiff a CDCR 114-D Lockup order, and told Plaintiff that Plaintiff would be released to ad-seg once released by medical and that Plaintiff would be issued a CDCR 115 Rules Violation Report for "Battery on a Peace Officer."

On January 31, 2014, at 1000 hours, Plaintiff was allowed to take a shower. After about 20 minutes, the effects of the pepper spray fully wore off.

On February 3, 2014, at 1000 hours, a doctor inquired about Plaintiff's pain level based on Plaintiff's apparent head and eye injuries. Plaintiff told the doctor that he felt dizzy, severe headache, and blurred vision. The doctor prescribed Plaintiff ibuprofen, acetaminophen, and made Plaintiff a specialty clinic appointment to see optometry.

At 1100 hours on February 3, 2014, Defendant Santos, escorted by I. Gonzalez, a defendant in Plaintiff's Fresno County Superior Court conversion action, case number 13CECG02602, provided Plaintiff with a CDCR 1083 Property Inventory Receipt. After Plaintiff noticed that there was no documentation of his legal files, books, and religious materials, he refused to sign the property receipt.

On February 5, 2014, Defendant Santos, along with A. Martinez, another defendant in Plaintiff's Fresno County Superior Court conversion action, case number 13CECG02602, brought Plaintiff's property to Delta 4 unit in order to bring Plaintiff's property within compliance of the 6 cubic feet property guideline policy. Plaintiff alleges that it was apparent that some of his property was already missing. Defendant Santos and Martinez issued an ultimatum: "Throw it away or send it home," and began discarding Plaintiff's property. (Id. at 14.)

On February 6, 2014, Plaintiff was brought before the Initial Classification Committee ("ICC") in Delta 4 unit for ad-seg review. The ICC consisted of, but was not limited to, Defendant Warden Frauenheim, Chief Deputy Warden R. Fisher, and Facility B Captain Shimmins. Plaintiff was informed that he would be held in ad-seg pending charges and adjudication of CDCR 115 Rules Violation Report, Log Number #14-FB-01-080, for "Battery on a Peace Officer Resulting in the Use of Force" on January 29, 2014. When Plaintiff stated that he was assaulted by staff and the reports are falsified, Fisher told Plaintiff that Plaintiff should save his statements for a 602 grievance or the Rules Violation Report hearing.

On February 7, 2014, Plaintiff filed a health care staff complaint against Defendant Hoggard for leaving Plaintiff in the hands of custody staff to suffer from his various injuries and pepper spray exposure and not providing any medical care.

On February 12, 2014, Plaintiff was issued CDCR 115 Rules Violation Report, Log Number #14-FB-01-080, for "Battery on a Peace Officer Resulting in the Use of Force." The Rules Violation Report was signed by Defendant Santos and dated for January 29, 2014. At this point, Plaintiff became aware of the extent of Defendant Santos' falsified allegations in his report to cover up the excessive force. Defendant Santos' false misrepresentation were presented to the Fresno County District Attorney and presented at the Rules Violation Report disciplinary hearing.

On February 18, 2014, Plaintiff was seen by the mental health department and prescribed Citalopram for severe depression and anxiety and weekly therapy sessions due to the trauma Plaintiff suffered. Also, on February 18, 2014, Plaintiff was taken to the specialty clinic for an optometry examination. It was ascertained that Plaintiff suffered eye damage from the assault and a bi-focal was added to his prescription. Plaintiff also suffered a stigmatism.

On February 19, 2014, Plaintiff was issued a CDCR 837 Crime/Incident Report, Log # PVSP-FBP-14-01-0022, dated 1/29/14, and which contained staff reports from Defendants Benavides, Bejinez, Erickson, Espinoza, Hill, Kennedy, Leon, Lopez, Luna, Newton, Ramirez, Salas, Santos, Hansen, Hoggard, Liebold, and Sharp.  Plaintiff alleges that this was the first opportunity he had to view the coordinated cover up that followed the assault.  Plaintiff states that the reports were falsified in order to cover up the systematic brutality by guards.

On March 11, 2014, Sergeant Clark, along with Correctional Officer Ruggles, conducted an excessive force video deposition in Delta 4 unit at 1925 hours.  On March 18, 2014, Sergeant Clark and Correctional Officer Ruggles conducted a second excessive force video deposition because they "ran out of tape on the last one."  (Id. at 16.)

On March 20, 2014, Plaintiff sent an excessive force staff complaint to Defendant Frauenheim.

Also, on March 20, 2014, Plaintiff requested a voluntary dismissal of Fresno County Superior Court Case No. 13CECG02602 because he was suffering from severe depression, severe headaches, fear of further retaliation, and inadequate law library provisions that limited him to three items of legal resources per week.  Additionally, Plaintiff alleges that Defendant Benavides denied Plaintiff two court-ordered telephone court conference calls in Case No. 13CECG02602, hindering Plaintiff's access to the court on December 23, 2013 and January 6, 2014.  On April 23, 2014, the voluntary dismissal without prejudice of Case No. 13CECG02602 was granted.

Also, on April 23, 2014, Plaintiff's staff complaint (PVSP 14-0683) against Defendant Santos for falsified reports, assault, and battery was granted in part.

On September 18, 2014, medical staff issued Plaintiff a second pair of eye-wear to conclude the correction of the damage to his eyes caused by the January 29, 2014 assault.

In September 2015, Plaintiff needed an operation to remove a lipoma tumor lesion in his right lateral flank, where Defendant Kennedy and other officers kicked Plaintiff in the rib area with military style boots.

On September 22, 2015, Plaintiff suffered temporary blindness in his right eye.  He was diagnosed with ocular migraines as a result of defendants beating Plaintiff in the head.

///

Plaintiff asserts that "Defendants" are being sued in their individual capacity and their official capacity.

Plaintiff seeks $5,000,000.00 in compensatory damages for each defendant in each cause of action, $5,000,000.00 in punitive damages for each cause of action, declaratory relief, costs of suit, and/or attorney's fees.

## III.   Discussion

### A.   Federal Rule of Civil Procedure 8

Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (citation and internal quotation marks omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678 (citation omitted).  This is because, while factual allegations are accepted as true, legal conclusions are not.  Id.; see also Twombly, 550 U.S. at 556-57; Moss, 572 F.3d at 969.  Therefore, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678  (citations and internal quotation marks omitted).

Here, in the "Cause of Action" portion of Plaintiff's complaint, many of Plaintiff's allegations are ascribed to "Defendants."  Since Plaintiff fails to identify which specific Defendants he is referring to when he states "Defendants," Plaintiff's complaint fails to give fair notice of all of the allegations and claims directed against each individual Defendant.  Gauvin v. Trombatore, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) ("Plaintiff must allege the basis of his claim against *each* defendant to satisfy Federal Rule of Civil Procedure 8(a)(2)[.]" (italics added)); see also Van Dyke Ford, Inc. v. Ford Motor Co., 399 F. Supp. 277, 284 (D. Wis. 1975) ("Specific identification of the parties to the activities alleged by the plaintiffs is required … to enable the defendant to plead intelligently.").  .

11

**B. Linkage Requirement**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Here, Plaintiff fails to adequately link Defendant M. George to any constitutional violation suffered by Plaintiff. While Plaintiff identifies Defendant George as the Registered Nurse supervisor and alleges that Defendant George was deliberately indifferent to Plaintiff's medical care, health, and safety, there are no factual allegations specifically asserting what Defendant George did, or did not do, and demonstrating a link between Defendant George's actions or omissions and the resulting deprivation of Plaintiff's constitutional rights. Therefore, Plaintiff has failed to allege any cognizable claim against Defendant George.

**C. Official Capacity**

Plaintiff asserts that he is suing each of the named Defendants in both their individual and official capacities. Plaintiff seeks monetary damages and declaratory relief against each of the named Defendants.

"Suits against state officials in their official capacity … should be treated as suits against the State." Hafer v. Melo, 502 U.S. 21, 25 (1991); Holley v. Cal. Dep't of Corr., 599 F.3d 1108, 1111 (9th Cir. 2010) (treating prisoner's suit against state officials in their official capacities as a suit against the state of California). An official capacity suit "represent[s] only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165

12

(1985) (citation omitted).  Such a suit "is not a suit against the official personally, for the real party in interest is the entity."  Id. at 166.

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities."  Aholelei v. Dep't of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007).  Therefore, Plaintiff's claim for monetary damages against all of the named Defendants in their official capacity is barred by the Eleventh Amendment.

Further, while the Eleventh Amendment does not bar claims for prospective injunctive relief against a state official who is sued in their official capacity, Plaintiff does not seek any prospective injunctive relief against any named Defendant in his complaint.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 92 (1989).  Additionally, even if Plaintiff were seeking prospective injunctive relief, Plaintiff's injunctive relief claim would be moot because Plaintiff has been transferred from PVSP and he has not demonstrated that there is a reasonable expectation that he will be transferred back to PVSP.  Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam); see also Andrews v. Cervantes, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007).

Accordingly, Plaintiff has failed to state a cognizable official capacity claim against any named Defendant.

### D.     Supervisory Liability

To the extent that Plaintiff seeks to hold Defendant Frauenheim, or any other supervisory Defendant, liable based solely on their supervisory role, he may not do so.

Supervisory personnel may not be held liable under section 1983 for the actions or omissions of subordinate employees based on respondeat superior, or vicarious liability.  Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013); accord Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Lacey v. Maricopa County, 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc).  "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  Crowley, 734 F.3d at 977 (citing Snow v. McDaniel, 681 F.3d 978, 989 (9th Cir. 2012)) (internal quotation marks omitted); accord Lemire, 726 F.3d at 1074-75; Lacey, 693 F.3d at 915-16.  "Under the latter theory, supervisory liability exists even without overt personal

participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." Crowley, 734 F.3d at 977 (citing Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted). Further, a supervisor's failure to train subordinates may give rise to individual liability under § 1983 where the failure to train amounts to deliberate indifference to the rights of persons with whom the subordinates are likely to come into contact. See Canell v. Lightner, 143 F.3d 1210, 1213-14 (9th Cir. 1998).

First, Plaintiff alleges that Defendant Frauenheim has a duty as Warden to protect the safety of the inmates at PVSP and a duty to ensure that subordinate staff is properly trained in pepper spray use and decontamination, MEB baton use, use of excessive force and reporting, handcuff and flex cuff application, search procedures, and spit hood application. (ECF No. 1, at 20.) To impose liability under a failure to train theory, a plaintiff must allege sufficient facts that the subordinate's training was inadequate, the inadequate training was a deliberate choice on the part of the supervisor, and the inadequate training caused a constitutional violation. Id. at 1214; see also City of Canton v. Harris, 489 U.S. 378, 391 (1989); Clement v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002) (to establish failure to train, a plaintiff must show that "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy-makers … can reasonably be said to have been deliberately indifferent to the need." (citation and internal quotation marks omitted)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick v. Thompson, 563 U.S. 51, 61 (2011) (citation omitted).

Here, while Plaintiff asserts that Defendant Frauenheim had a duty to ensure that subordinate staff were properly trained in a number of different subject areas, Plaintiff has not alleged facts demonstrating that any named subordinate Defendant's training was inadequate, that the inadequate training was a deliberate choice on Defendant Frauenheim's part, and that the inadequate training caused the violation of Plaintiff's constitutional rights. Further, Plaintiff has failed to plead facts showing that Defendant Frauenheim was on notice that his subordinate employees' training was

14

inadequate because there has been a pattern of similar constitutional violations by untrained, or insufficiently trained, employees. Therefore, Plaintiff has failed to state a cognizable supervisory liability claim for failure to train subordinate employees against Defendant Frauenheim.

Second, Plaintiff asserts that Defendant Frauenheim violated his Eighth Amendment right against cruel and unusual punishment by enforcing Department Operations Manual § 51020.16, the spit hood mask policy. Plaintiff has not alleged any facts that the spit hood mask policy is so deficient that the policy itself a repudiation of constitutional rights and is the moving force behind a violation of Plaintiff's constitutional rights. Indeed, Plaintiff appears to allege that the spit mask policy was violated by the actions of the officers, and there are no factual allegations that Defendant Frauenheim implemented any contra policy. Therefore, Plaintiff has failed to state a cognizable supervisory liability claim based on the spit hood mask policy against Defendant Frauenheim.

### E. <u>Heck</u> Bar

Since Plaintiff has alleged that he was issued a CDCR 115 Rules Violation Report, Log Number 14-FB-01-080, for battery on a peace officer resulting in the use of force, there is a chance that some of Plaintiff's claims could be barred by the favorable termination rule. (ECF No. 1, at 14-15.)

It has long been established that state prisoners cannot challenge the fact or duration of their confinement in a § 1983 action and their sole remedy lies in habeas corpus relief. <u>Wilkinson v. Dotson</u>, 544 U.S. 74, 78 (2005). Often referred to as the favorable termination rule or the <u>Heck</u> bar, this exception to § 1983's otherwise broad scope applies whenever state prisoners "seek to invalidate the duration of their confinement-either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody." <u>Wilkinson</u>, 544 U.S. at 81; <u>Heck v. Humphrey</u>, 512 U.S. 477, 482, 486–87 (1994); <u>Edwards v. Balisok</u>, 520 U.S. 641, 644 (1997). Thus, "a state prisoner's [section] 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." <u>Wilkinson</u>, 544 U.S. at 81–82. In the prison disciplinary context, the favorable termination rule or <u>Heck</u> bar

applies if the "defect complained of by [Plaintiff] would, if established, necessarily imply the invalidity of the deprivation of his good-time credits[,]" Edwards v. Balisok, 520 U.S. 641, 646 (1997), and if the restoration of those credits "necessarily" would "affect the duration of time to be served[.]" Muhammad v. Close, 540 U.S. 749, 754 (2004) (*per curiam*).

In this case, while Plaintiff alleges that he was issued a Rules Violation Report for battery on a peace officer resulting in the use of force, Plaintiff does not allege that he was found guilty of the Rules Violation Report and that he lost any good time credits due to the guilty prison disciplinary finding. Therefore, the Court cannot determine that any of Plaintiff's claims would necessarily imply the invalidity of any deprivation of Plaintiff's good time credits and/or that restoration of those good time credits would necessarily affect the length of Plaintiff's sentence. Accordingly, the Court finds that it is not clear from the face of Plaintiff's complaint that any of Plaintiff's claims are Heck-barred.

### F.     Excessive Force

Plaintiff asserts that certain Defendants violated his Eighth Amendment right against cruel and unusual punishment by using excessive force on him.

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. Hudson v McMillian, 503 U.S. 1, 5 (1992) (citations omitted). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832–33 (1994) (quotations omitted).

For claims of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. Relevant factors for this consideration include "the extent of injury... [,] the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Id. (quoting Whitley v. Albers, 475 U.S. 1078, 1085 (1986)). The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of

decency, <u>Hudson</u>, 503 U.S. at 8 (quotation marks and citation omitted), and although *de minimis* uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident, <u>Wilkins v. Gaddy</u>, 559 U.S. 34, 37-38 (2010) (citing <u>Hudson</u>, 503 U.S. at 9-10) (quotation marks omitted); <u>Oliver v. Keller</u>, 289 F.3d 623, 628 (9th Cir. 2002).

1.    <u>Defendants Santos and Leon</u>

Plaintiff alleges that, after Defendant Santos ordered Plaintiff to remove his boxer shorts and Plaintiff asked to wait for a moment due to the presence of at least one female, Defendant Santos told Plaintiff to "get down" and when Plaintiff asked what he had done, Defendant Santos sprayed Plaintiff directly in the face with a canister of pepper spray. When Plaintiff went to the back of the shower to rinse his eyes with his back to Defendant Santos, Defendant Santos entered the shower and beat Plaintiff across his left leg with his MEB expandable baton. After Plaintiff turned around and faced Defendant Santos, Defendant Santos left the shower and Defendant Leon sprayed Plaintiff in the face with a canister of pepper spray while yelling for Plaintiff to get down. When Plaintiff attempted to comply with the order to prone out on the ground, Defendant Santos re-entered the shower and hit Plaintiff across the arm, wrist, elbow, and body with his baton. After other officers arrived at the scene of the incident, Defendant Santos sprayed another canister of pepper spray in Plaintiff's face. As Plaintiff once again attempted to prone out, Defendant Santos entered the shower for a third time, hit Plaintiff's arms and legs with his baton, and grabbed Plaintiff by the ankle and dragged Plaintiff out of the shower and onto the dayroom floor.

These allegations are sufficient to state a cognizable claim for excessive force against Defendants Santos and Leon.

2.    <u>Defendants Benavides, Bejinez, Erickson, Espinoza, Hill, Kennedy, Lopez, Luna, Ramirez, Salas, and Trinidad</u>

Plaintiff alleges that, after Defendant Espinoza made a call over her radio about a disturbance in Building 1, Defendant Benavides and approximately ten responding officers, including Defendants Bejinez, Erickson, Hill, Kennedy, Lopez, Luna, Ramirez, Salas, and Trinidad, entered the building waving batons and shaking up canisters of pepper spray. The Defendants formed a skirmish line in

front of the shower, yelling at Plaintiff to get down on the floor. After Defendant Santos sprayed Plaintiff in the face with pepper spray, "the responders" emptied numerous canisters of pepper spray directing into Plaintiff's face as they yelled for Plaintiff to get down.

Further, after Defendant Santos dragged Plaintiff out of the shower, Plaintiff asserts that Defendants Hill and Salas jumped on Plaintiff's back and began punching Plaintiff in the face and head. Defendants Benavides and Luna held Plaintiff's arm as Defendants Hill and Salas punched Plaintiff in the head and face. Further, Defendants Benavides, Luna, Lopez, and Salas were punching and pulling on Plaintiff's wrist while yelling for Plaintiff to stop resisting. "Other officers" began kicking and stomping Plaintiff's legs and torso until Plaintiff got weak, but Defendant Kennedy continued kicking Plaintiff. Plaintiff's wrists were then cuffed behind his back extremely tightly and Defendant Ramirez placed flex cuffs on Plaintiff's ankles, so tightly that they dug into Plaintiff's flesh, causing pain and bleeding. Plaintiff alleges that Defendants Bejinez and Trinidad lifted Plaintiff off of the gurney in the stokes litter and slammed Plaintiff to the ground in the holding tank.

These allegations are sufficient to state a cognizable claim for excessive force against Defendants Benavides, Hill, Salas, Luna, Lopez, Kennedy, Bejinez, and Trinidad.

However, initially, Plaintiff's allegations regarding the tight flex cuffs on his ankles does not establish a cognizable excessive force claim against Defendant Ramirez because Plaintiff has not alleged any facts showing that he ever told Defendant Ramirez that the flex cuffs were too tight or that Defendant Ramirez otherwise knew that the flex cuffs were too tight. See Guerrero v. Rivera, No. EDCV 13-0092-JGB (JPR), 2013 WL 878285, at *2 (C.D. Cal. Mar. 8, 2013). Therefore, Plaintiff has not alleged a cognizable claim for excessive force based on tight ankle flex cuffs against Defendant Ramirez.

Further, Plaintiff's allegations that "the responders" emptied numerous canisters of pepper spray into Plaintiff's face and that "other officers" began kicking and stomping Plaintiff's legs and torso do not establish that a cognizable excessive force claim because Plaintiff has failed to link any named Defendant to these allegations. Rather, Plaintiff should identify each involved Defendant by name and link each of them to his claim by explaining what each Defendant did, or failed to do, that caused a violation of his constitutional rights. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988)

1  (liability may be imposed on individual defendant under § 1983 only if plaintiff can show that

2  defendant proximately caused deprivation of federally protected rights). If Plaintiff is unable to

3  identify the responders at this time, in any amended complaint, he may name them as "Doe"

4  defendants.  However, Plaintiff will be required to name the Doe Defendants before service can be

5  completed upon them until Plaintiff has identified them as actual individuals and amended his

6  complaint to substitute names for John Doe.  Therefore, Plaintiff has failed to allege a cognizable

7  claim for excessive force against Defendants Erickson, Espinoza, and Ramirez.

8         3.      Defendant Deshazo

9         Plaintiff alleges that, when he arrived at the Facility B medical clinic, Defendants Bejinez and

10  Trinidad lifted him off the gurney in the stokes litter and slammed him to the ground in the holding

11  tank.  This action caused the already too tight handcuffs under Plaintiff's body to click tighter and dig

12  deeper into Plaintiff's injured wrist, causing excruciating pain.  Plaintiff alleges that he begged

13  Defendant Deshazo, the assigned medical triage coverage officer, to loosen up or remove the cuffs, but

14  Defendant Deshazo refused.

15        However, Plaintiff has not alleged that he asked Defendant Deshazo more than once to loosen

16  the handcuffs or that Defendant Deshazo otherwise knew that the handcuffs were too tight and were

17  causing Plaintiff to suffer severe pain.  See Guerrero v. Rivera, No. EDCV 13-0092-JGB (JPR), 2013

18  WL 878285, at *2 (C.D. Cal. Mar. 8, 2013) (finding that plaintiff had failed to state a cognizable

19  excessive force claim regarding overly tight handcuffs were the named defendants had nothing to do

20  with the handcuffing, that plaintiff did not allege that he made more than one request to any defendant

21  to loosen the cuffs, or that any defendant was present for more than a few moments and was able to

22  observe the effect the handcuffs had on the plaintiff); Gregory v. Adams, No. CIV S-05-1393 FCD

23  EFB P, 2008 WL 486013, at *5 (E.D. Cal. Feb. 19, 2008) (holding that triable issue existed as to

24  whether officer who did not personally handcuff plaintiff nonetheless used excessive force in ignoring

25  plaintiff's repeated assertions of pain and refusing to loosen cuffs for more than five hours).

26  Therefore, Plaintiff has not alleged a cognizable claim for excessive force based on refusing to loosen

27  overly tight handcuffs against Defendant Deshazo.

28  ///

### 4.  Failure to Intervene in Excessive Force

A prison official may be liable under § 1983 if he is aware that a fellow official is violating a prisoner's constitutional rights, but fails to intervene.  See Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000) ("[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen.") (citation omitted); see also Gaudreault v. Municipality of Salem, 923 F.2d 203, 207 n. 3 (1st Cir. 1990) ("An officer who is present at the scene who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance.").  A failure to intervene can support an excessive force claim where the bystander-officers had a realistic opportunity to intervene, but failed to do so.  Lolli v. County of Orange, 351 F.3d 410, 418 (9th Cir. 2003); Cunningham, 229 F.3d at 1289.

Plaintiff asserts that Defendants Espinoza, Luna, and Newton witnessed Defendant Santos' unprovoked attack on Plaintiff, but failed to intervene.  (ECF No. 1, at 8.)  Liberally construing Plaintiff's allegations, Plaintiff states a cognizable claim for failure to intervene against Defendants Espinoza, Luna, and Newton.

Plaintiff asserts that Defendants Benavides, Bejinez, Erickson, Espinoza, Hill, Kennedy, Leon, Lopez, Luna, Ramirez, Salas, and Trinidad all had a duty to intervene in Defendant Santos' assault of Plaintiff.  (ECF No. 1, at 8.)  However, Plaintiff has failed to allege facts demonstrating that each of those Defendants was present when Defendant Santos utilized force on Plaintiff, that each of those Defendants could see that Defendant Santos was using excessive force on Plaintiff, and that each of those Defendants had a realistic opportunity to intervene during Defendant Santos' assault of Plaintiff.

Finally, Plaintiff asserts that, at no time, did any of the surrounding officers intervene to stop the beating of Plaintiff.  (ECF No. 1, at 9.)  However, this allegation fails to establish a cognizable failure to intervene claim because Plaintiff has failed to link any named Defendant to this allegation.  See Leer, 844 F.2d at 634 (liability may be imposed on individual defendant under § 1983 only if plaintiff can show that defendant proximately caused deprivation of federally protected rights).  Indeed, Plaintiff alleges that some or all of these Defendants were engaging in acts excessive force at that time, and therefore were not failing to intervene.

Therefore, Plaintiff has failed to allege a cognizable claim for failure to intervene in excessive force against Defendants Benavides, Bejinez, Erickson, Hill, Kennedy, Leon, Lopez, Ramirez, Salas, and Trinidad.

**G.  Unreasonable Search**

The Fourth Amendment prohibits only unreasonable searches.  Bell v. Wolfish, 441 U.S. 520, 558 (1979); Byrd v. Maricopa Cnty. Sheriff's Office, 629 F.3d 1135, 1140 (9th Cir. 2011); Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988).  The reasonableness of the search is determined by the context, which "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." Bell, 441 U.S. at 559.  Factors that must be evaluated are "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id.; Bull v. City and Cnty. of San Francisco, 595 F.3d 964, 972 (9th Cir. 2010) (*en banc*).

1.  Defendant Santos

Plaintiff alleges that Defendant Santos violated his Fourth Amendment right against unreasonable searches when Defendant Santos ordered Plaintiff to disrobe, blinded him with pepper spray, attacked him with a MEB baton, dragged him out of the shower, beat, kicked, and stomped Plaintiff, applied cuffs on Plaintiff too tightly, stripped Plaintiff naked, and carried Plaintiff across the prison yard naked in the presence of the inmate and staff population.  (ECF No. 1, at 23.)

However, initially, the Court finds that Defendant Santos' body search of Plaintiff ended when Defendant Santos opened the shower gate and told Plaintiff to get down and cuff up.  (ECF No. 1, at 7.)  Therefore, Plaintiff has failed to allege a cognizable Fourth Amendment claim against Defendant Santos based on allegations that Defendant Santos blinded him with pepper spray, attacked him with a MEB baton, dragged him out of the shower, beat, kicked, and stomped Plaintiff, applied cuffs on Plaintiff too tightly, stripped Plaintiff naked, and carried Plaintiff across the prison yard naked in the presence of the inmate and staff population because the Fourth Amendment's protection against unreasonable searches is not applicable to any actions taken by Defendant Santos after the search ended.

With regards to Plaintiff's allegation that Defendant Santos violated Plaintiff's Fourth Amendment right against unreasonable searches when Defendant Santos ordered Plaintiff to disrobe, the Fourth Amendment applies to the invasion of bodily privacy in prisons.  <u>Bull</u>, 595 F.3d at 974-75; <u>Michenfelder</u>, 860 F.2d at 333. Defendant's order for and requiring Plaintiff to disrobe does not state a cognizable claim. Similar strip searches have been held constitutionally permissible by the Ninth Circuit and Supreme Court. See, e.g., <u>Florence v. Bd. of Chosen Freeholders</u>, 566 U.S. 318 (2012); <u>Bull v. City & County of San Francisco</u>, 595 F.3d 964 (9th Cir. 2010) (en banc). "Shielding one's unclothed figure from the view of strangers, particularly strangers of the opposite sex is impelled by elementary self-respect and personal dignity." <u>Michenfelder</u>, 860 F.2d at 333.  However, the Ninth Circuit has held that occasional viewing of unclothed male prisoners by female correctional officers does not violate the Fourth Amendment rights of the inmates.  <u>Id.</u> at 334; <u>see also</u> <u>Grummett v. Rushen</u>, 779 F.2d 491, 494-95 (9th Cir. 1985).

Here, Plaintiff asserts that Defendant Santos approached the shower that Plaintiff was in and told Plaintiff to give his boxers to Defendant Santos as Defendant Espinoza, a female officer, entered the building, looking toward the shower and the search of Plaintiff.  However, Plaintiff's boxers were not removed until after Defendant Santos' body search of Plaintiff was over.  Therefore, Plaintiff has failed to allege a cognizable Fourth Amendment claim against Defendant Santos based on allegations that Defendant Santos ordered Plaintiff to take his boxers off while a female officer was able to view the body search.

### 2. Defendant Benavides and "Responder officers"

Plaintiff alleges that Defendant Benavides and "Responder officers" violated his Fourth Amendment right to unreasonable searches when they excessively pepper sprayed Plaintiff, jumped on his back, hit Plaintiff in the head and face, kicked Plaintiff's body, legs, and genitalia, applied cuffs too tightly, and when Defendant Salas snatched off Plaintiff's boxer shorts.  (ECF No. 1, at 23.) Additionally, Plaintiff alleges that "Defendants" violated his Fourth Amendment right against unreasonable searches when they failed to intervene when Defendant Salas removed Plaintiff's boxer shorts, leaving him naked in the presence of female guards and medical staff, and when he was moved through the prison yard while still naked.

However, all of these allegations occurred after Defendant Santos' body search of Plaintiff ended. Plaintiff cannot convert claims for excessive force and failure to intervene into Fourth Amendment violations. Therefore, Plaintiff has failed to allege a cognizable Fourth Amendment claim against Defendant Benavides and "Responder officers."

**H.     Violation of First Amendment Free Exercise of Religion Clause**

"The right to exercise religious practices and beliefs does not terminate at the prison door." McElyea v. Babbitt, 833 F.2d 196, 197 (9th Cir. 1987) (citing O'Lone v. Shabazz, 482 U.S. 342, and Bell v. Wolfish, 441 U.S. 520, 545 (1979). The right to free exercise of religious faith is, however, 'necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." McElyea, 833 F.2d at 197. Federal courts "determine whether these competing interests are balanced properly by applying a 'reasonableness' test." Id. Action by prison officials that impacts an inmate's right to free exercise of religion "is valid if it is reasonably related to legitimate penological interests." Id. (internal quotation marks omitted).

1.     Defendant Santos

Plaintiff asserts that Defendant Santos violated his First Amendment right to free exercise of religion, specifically his "right to modesty under the Islamic Beliefs" when Defendant Santos used pepper spray and physical force to get Plaintiff naked in the presence of Defendant Espinoza, a female guard. (ECF No. 1, at 21.) However, Plaintiff has failed to allege any facts establishing that Defendant Santos used any kind of force to "get Plaintiff naked." In fact, Plaintiff alleges that Defendant Salas, not Defendant Santos, was the Defendant who removed Plaintiff's boxer shorts from his body. Plaintiff has not pled that Defendant Santos directed Defendant Salas to remove Plaintiff's boxer shorts or was in any way involved in Defendant Salas' decision to remove Plaintiff's boxers. Therefore, Plaintiff has not pled a cognizable claim for violation of his First Amendment right to free exercise of religion against Defendant Santos.

2.     Defendants Salas, Bejinez, Trinidad, and Deshazo

Plaintiff alleges that, after he was cuffed at the wrists and ankles, placed in a stokes litter, and placed on a gurney, Defendant Salas "snatched" Plaintiff's boxer shorts off of his body and placed the pepper spray-soaked underwear over Plaintiff's face. Nothing was placed over Plaintiff's genitalia in

order to cover them.  Thus, at that point, Plaintiff was completely naked in front of Defendants Espinoza, Hansen, Liebold, and Sharp, all women.  Defendants Bejinez and Trinidad then wheeled Plaintiff on the gurney across the yard, still completely naked, in the presence of the inmate population, custody staff of both genders, and support services staff.  Plaintiff was placed, in the stokes litter, on the ground of the holding tank in the Facility B medical clinic, still naked.  Defendant Deshazo, the assigned medical triage coverage officer, did not cover up Plaintiff's genitalia at any time even though he opened the door to the medical clinic and let Inmate Homick, who was able to see Plaintiff lying naked on the floor, into the clinic.  (ECF No. 1, at 9-10.)  Plaintiff further alleges that these actions violated his First Amendment right to free exercise of religion, specifically his "right to modesty under the Islamic Beliefs."  (Id. at 21.)

The Court finds that, liberally construed, these allegations are sufficient to plead a cognizable claim for violations of Plaintiff's First Amendment right to free exercise of religion against Defendants Salas, Bejinez, Trinidad, and Deshazo.

## I.  Sexual Assault/Harassment

"Sexual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment.  See Schwenk v. Hartford, 204 F.3d 1187, 1197 (9th Cir. 2000) ('In the simplest and most absolute of terms … prisoners [have a clearly established Eighth Amendment right] to be free from sexual abuse ….'); see also Women Prisoners of the Dist. of Columbia Dep't of Corr. v. District of Columbia, 877 F. Supp. 634, 665 (D.D.C. 1994) ('[U]nsolicited touching of … prisoners' [genitalia] by prison employees are "simply not part of the penalty that criminal offenders pay for their offenses against society"' (quoting Farmer v. Brennan, 511 U.S. 825, 834 … (1994))), aff'd in part and vacated in part, 93 F.3d 910 … (D.C. Cir. 1996)."  Wood v. Beauclair, 692 F.3d 1041, 1046 (9th Cir. 2012.)  "In evaluating a prisoner's claim, courts consider whether 'the officials act[ed] with a sufficiently culpable state of mind' and inf the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation."  Id.

In this case, Plaintiff alleges that Defendant Salas "snatched off [Plaintiff's] boxer shorts abusing his genitalia and leaving it exposed for two hours," (ECF No. 1, at 23), that Defendants Bejinez and Trinidad wheeled Plaintiff on the gurney across the yard, still completely naked, in the

presence of the inmate population, custody staff of both genders, and support services staff, and that Defendant Deshazo let another inmate into the medical clinic, who was able to see Plaintiff lying naked on the floor.

However, while "the Ninth Circuit has recognized that sexual harassment may constitute a cognizable claim for an Eighth Amendment violation, the Court has specifically differentiated between sexual harassment that involves verbal abuse and that which involves allegations of physical assault, finding the later to be in violation of the constitution." Minifield v. Butikofer, 298 F. Supp. 2d 900, 904 (N.D. Cal. 2004) (citation omitted). Here, Plaintiff does not clearly allege that Defendants Salas, Bejinez, Trinidad, or Deshazo physically touched him in a sexual manner. Somers v. Thurman, 109 F.3d 614, 624 (9th Cir. 1997) ("To hold that gawking, pointing, and joking violates the prohibition against cruel and unusual punishment would trivialize the objective component of the Eighth Amendment test and render it absurd."). Further, to the extent that Plaintiff's allegation that Defendant Salas "snatched off" Plaintiff's boxer shorts, abusing Plaintiff's genitalia, means that Defendant Salas actually touched Plaintiff's genitalia, Plaintiff has failed to allege that any touch to his genitalia was more than brief. Berryhill v. Schriro, 137 F.3d 1073 (8th Cir. 1998) (stating a prisoner plaintiff failed to establish a sexual assault claim where two brief touches to an inmate's buttocks, unaccompanied by any sexual comments or banter, lasted only seconds and the inmate thought that the defendants were trying to embarrass him, not rape him).

Therefore, Plaintiff has not pled a cognizable claim for sexual assault or sexual harassment against any named Defendant.

## J. Conditions of Confinement

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Prison officials therefore have a "duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (citations omitted). "Although the routine discomfort inherent in the prison setting is inadequate to satisfy the objective prong of an Eighth Amendment inquiry, 'those deprivations denying "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of

an Eighth Amendment violation.'" Id.; see also Hudson v. McMillian, 503 U.S. 1, 9 (1992). "The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred." Id.

"A prisoner claiming an Eighth Amendment violation must show (1) that the deprivation he suffered was 'objectively, sufficiently serious'; and (2) that prison officials were deliberately indifferent to his [health or] safety in allowing the deprivation to take place." Morgan, 465 F.3d at 1045. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if the official knows that the plaintiff faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it. Farmer v. Brennan, 511 U.S. 825, 837-45 (1994). Delays in providing showers and medical attention for inmates suffering from harmful effects of pepper spray may violate the Eighth Amendment. Clement v. Gomez, 298 F.3d 898, 905-06 (9th Cir. 2002).

Plaintiff alleges that he was thoroughly sprayed with pepper spray during an incident with various named Defendants. When Plaintiff arrived at the Facility B medical clinic, Defendant Deshazo refused to summon medical staff to provide treatment, as Plaintiff was screaming in pain, hyperventilating, coughing, and sweating. Instead, Defendant Deshazo placed a spit mask hood over Plaintiff's head even though Plaintiff was showing apparent signs of respiratory distress. While Plaintiff wore the spit mask hood, Plaintiff was choking, gagging for air, hyperventilating, sweating, mucous was sticking to the spit hood, which clogged up the mask and caused Plaintiff to partially suffocate and fight for air, and he was in and out of consciousness. Defendant Deshazo disregarded Plaintiff's pleas for help, even though the Defendant was within ten feet of Plaintiff, and Plaintiff wore the spit mask hood for at least an hour.

After Defendants Bejinez and Trinidad had a conversation with Defendant Benavides, Defendants Bejinez and Trinidad wheeled Plaintiff across the yard to the gym for decontamination. Defendants Bejinez and Trinidad removed the spit mask hood. After one of the officers stated that the showers were not working, Defendants Bejinez and Trinidad left Plaintiff lying in the stokes litter on the gurney, and sat down and had a personal conversation. Defendant Benavides entered the gym, told Defendants Bejinez and Trinidad to remove the cuffs, take Plaintiff out of the stokes litter, and place

him on the bench.  After placing Plaintiff on the bench, Defendants Bejinez and Trinidad just sat and resumed their conversation.  Another prison official entered the gym and twice poured water from a bucket over Plaintiff's head, but refused to pour a third bucket of water over Plaintiff after Plaintiff requested the official do so.  After that, Defendant Benavides told Defendants Bejinez and Trinidad to take Plaintiff to administrative segregation and Defendants Bejinez and Trinidad did so.  Plaintiff alleges that he continued to feel burning from the pepper spray in his eyes and on his body for a few days until he was able to take a shower.

The Court finds that, liberally construed, these allegations are sufficient to state a cognizable claim for unconstitutional conditions of confinement against Defendants Deshazo, Bejinez, Trinidad, and Benavides.

### K.    Deliberate Indifference to Serious Medical Needs

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs.  Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds by Peralta v. Dillard, 744 F.3d 1076, 1082–83 (9th Cir. 2014); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent."  Jett, 439 F.3d at 1096 (citation omitted).

A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care.  Snow, 681 F.3d at 985.  Deliberate indifference may be shown by the denial, delay, or intentional interference with medical treatment or by the way in which medical care is provided. Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988).  "Deliberate indifference is a high legal standard," Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure

1    to respond to a prisoner's pain or possible medical need" and the indifference caused harm. Jett, 439

2    F.3d at 1096. In applying this standard, the Ninth Circuit has held that before it can be said that a

3    prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial.

4    Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."

5    Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105–06).)

6    Plaintiff alleges in his complaint that he was thoroughly pepper sprayed, kicked, punched, and

7    stomped during an incident with various Defendants. After the incident was over and Plaintiff was

8    cuffed, Defendants Hoggard, Hansen, Liebold, and Sharp brought a gurney. Plaintiff was placed on

9    the gurney and taken to the Facility B medical clinic. At the medical clinic, Defendant Deshazo was

10   within ten feet of Plaintiff and disregarded Plaintiff's pleas for help even though he witnessed Plaintiff

11   screaming in pain, hyperventilating, coughing, sweating, choking, fighting for air through a spit hood

12   mask, and drifting in and out of consciousness. After Defendants Bejinez and Trinidad took Plaintiff

13   to the gym for pepper spray decontamination, one of the two Defendants stated that the showers were

14   not working and then ignored Plaintiff. After Defendants Bejinez and Trinidad took Plaintiff out of

15   the stokes litter and gurney, Defendants Bejinez, Trinidad, Hoggard, and Benavides witnessed Plaintiff

16   not being able to hold up himself up and that Plaintiff could not support himself with his injured arm,

17   wrist, knees, or leg. Defendants Bejinez, Trinidad, and Benavides had to assist Plaintiff in put on a

18   pair of boxer shorts. Also, Defendants Bejinez and Trinidad had to carry Plaintiff into the

19   administrative segregation unit. Then, four hours after Plaintiff was taken to administrative

20   segregation, Plaintiff was found unresponsive in his cell by an administrative segregation unit officer.

21   The Court finds that, liberally construed, Plaintiff's allegations state a cognizable claim for

22   deliberate indifference to serious medical needs against Defendants Benavides, Bejinez, Deshazo,

23   Hoggard, and Trinidad.

24   However, Plaintiff has not pled a cognizable claim for deliberate indifference to serious

25   medical needs against Defendants George, Hansen, Liebold, and/or Sharp because Plaintiff has not

26   alleged facts demonstrating that each of those Defendants knew of and disregarded Plaintiff's physical

27   distress and requests for medical attention.

28   ///

28

### L. Conspiracy

To establish a cognizable claim for conspiracy under 42 U.S.C. § 1983, a plaintiff must allege (1) the existence of an express or implied agreement among the defendants to deprive the plaintiff of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement. Avalos v. Baca, 596 F.3d 583, 592 (9th Cir. 2010). To establish a conspiracy, Plaintiff allege specific facts showing "an agreement or meeting of the minds to violate constitutional rights. To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002) (internal citations and quotation marks omitted). The mere conclusory statement that defendants "conspired" together is not sufficient to state a cognizable claim. Woodrum v. Woodward Cnty., 866 F.2d 1121, 1126 (9th Cir. 1989).

Here, Plaintiff alleges that Defendants Benavides and Hoggard had an "orchestrated plan of action" to minimize Plaintiff's documented injuries in order to isolate Plaintiff in administrative segregation in order to try and prevent Plaintiff from receiving medical care which would have opened up a serious investigation into excessive force and completion of an excessive force video deposition. However, Plaintiff has failed to allege any specific facts establishing that Defendants Benavides and Hoggard expressly or impliedly agreed together to deprive Plaintiff of his constitutional right to medical care. Therefore, Plaintiff has not pled a cognizable conspiracy claim against Defendants Benavides and Hoggard.

### M. Deprivation of Property

Prisoners have a protected interest in their personal property. Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). An authorized, intentional deprivation of property is actionable under the Due Process Clause. See Hudson v. Palmer, 468 U.S. 517, 532 n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 435–36 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985). However, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson, 468 U.S. at 533.

Here, Plaintiff alleges that Defendant Santos brought Plaintiff's property to the administrative

segregation unit in order to bring Plaintiff's property within the administrative segregation property limit, but it was apparent to Plaintiff that property was already missing when his property was brought to him. Additionally, Plaintiff states that Defendant Santos told him to throw the property away and send the property home, and began discarding Plaintiff's property. Since Defendant Santos' conduct is an unauthorized deprivation of property, due process is satisfied if there is a meaningful post-deprivation remedy available to him. Id. Plaintiff has an adequate post-deprivation remedy available under California law. Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810-895). Therefore, Plaintiff fails to allege a cognizable due process claim based on the deprivation of his property against Defendant Santos.

## N.    False Reports

Prisoners do not have a liberty interest in being free from false accusations of misconduct. This means that the falsification of a report, even when intentional, does not alone give rise to a claim under § 1983. Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986) ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."); Buckley v. Gomez, 36 F. Supp. 2d 1216, 1222 (S.D. Cal. 1997) (stating that "a prisoner does not have a constitutional right to be free from wrongfully issued disciplinary reports[]"). However, there are two ways that allegations that an inmate has been subjected to a false disciplinary report can state a cognizable civil rights claim: (1) when the prisoner alleges that the false disciplinary report was filed in retaliation for his exercise of a constitutional right; and (2) when the prisoner alleges that they were not afforded procedural due process in a proceeding concerning a false report. See Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997) (discussing retaliation claim against a correctional officer based upon the correctional officer's false accusations of violating a prison rule); Freeman, 808 F.2d at 951 (holding that the filing of a false disciplinary charge against a prisoner is not actionable under § 1983 if prison officials provide the prisoner with procedural due process protections); Hanrahan v. Lane, 747 F.2d 1137, 1140-41 (7th Cir. 1984) (same).

Here, Plaintiff alleges that Defendant Santos authored a false Rules Violation Report for battery on a peace officer resulting in the use of force and that Defendants Bejinez, Erickson,

30

Espinoza, Hill, Kennedy, Leon, Lopez, Luna, Newton, Ramirez, Salas, Santos, Hansen, Hoggard, Liebold, and Sharp authored false reports as part of a CDCR 837 Crime/Incident report. However, Plaintiff has not alleged any facts demonstrating that the false reports were filed in retaliation for his exercise of a constitutional right. Further, Plaintiff has failed to allege facts sufficient to establish that he was not provided the procedural due process protections set forth in <u>Wolff</u> during the resulting disciplinary proceedings. <u>Wolff v. McDonnell</u>, 418 U.S. 539, 564–71 (1974) ("Such protections include the rights to call witnesses, to present documentary evidence and to have a written statement by the fact-finder as to the evidence relied upon and the reasons for the disciplinary action taken.") Therefore, Plaintiff has failed to state a cognizable claim for violation of his due process or any other constitutional rights based on any false reports against Defendant Santos, Bejinez, Erickson, Espinoza, Hill, Kennedy, Leon, Lopez, Luna, Newton, Ramirez, Salas, Hansen, Hoggard, Liebold, and Sharp.

### O. Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. <u>Silva v. Di Vittorio</u>, 658 F.3d 1090, 1104 (9th Cir. 2011); <u>Rizzo v. Dawson</u>, 778 F.2d 527, 532 (9th Cir. 1985); <u>see also</u> <u>Valandingham v. Bojorquez</u>, 866 F.2d 1135 (9th Cir. 1989); <u>Pratt v. Rowland</u>, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005); <u>accord</u> <u>Watison v. Carter</u>, 668 F.3d 1108, 1114-15 (9th Cir. 2012); <u>Silva</u>, 658 at 1104; <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009).

Adverse action taken against a prisoner "need not be an independent constitutional violation. The mere threat of harm can be an adverse action." <u>Watison</u>, 668 F.3d at 1114 (internal citations omitted). A causal connection between the adverse action and the protected conduct can be alleged by an allegation of a chronology of events from which retaliation can be inferred. <u>Id</u>. The filing of grievances and the pursuit of civil rights litigation against prison officials are both protected activities. <u>Rhodes</u>, 408 F.3d at 567–68. A plaintiff must allege either a chilling effect on future First

Amendment activities, or that he suffered some other harm that is "more than minimal." <u>Watison</u>, 668 F.3d at 1114.  A plaintiff successfully pleads that the action did not reasonably advance a legitimate correctional goal by alleging, in addition to a retaliatory motive, that the defendant's actions were "arbitrary and capricious" or that they were "unnecessary to the maintenance of order in the institution." <u>Id</u>.

Initially, Plaintiff alleges that custody staff at PVSP have a longstanding practice of using unclothed body searches to initiate assaults against "targeted inmates" as a means of retaliation resulting in false Rules Violation Reports, various prison disciplinary sanctions, and referral to the District Attorney for prosecution.  Plaintiff states that he fit the criteria of a "targeted inmate" because, at the time of the events alleged in this complaint, he was actively pursuing a state-law conversion action against two PVSP correctional officers in the Fresno County Superior Court.  However, these allegations fail to establish a cognizable retaliation claim because Plaintiff has failed to allege that any named Defendant knew of these actions, took one or more of the adverse actions that they are alleged to have taken against Plaintiff because Plaintiff was pursuing a state court lawsuit against two PVSP correctional officers, that the Defendant's action chilled Plaintiff's exercise of his First Amendment rights, and that the Defendant's adverse action did not reasonably advance a legitimate correctional goal.  <u>See</u> <u>Rhodes</u>, 408 F.3d at 567-68.  Plaintiff's conclusory allegations lumping Defendants together are insufficient. Therefore, Plaintiff has not pled a cognizable claim for retaliation in violation of the First Amendment.

**P.    Denial of Access to the Courts**

Prisoners have a "fundamental constitutional right of access to the courts." <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977).  The right of access is grounded in the First and Fourteenth Amendments. <u>Silva v. Di Vittorio</u>, 658 F.3d 1090, 1101–02 ("Under the First Amendment, a prisoner has both a right to meaningful access to the courts and a broader right to petition the government for a redress of his grievances."), <u>overruled on other grounds as stated in Richey v. Dahne</u>, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015; <u>Cornett v. Donovan</u>, 51 F.3d 894, 897 (9th Cir. 1995) ("The right of access is grounded in the Due Process and Equal Protection Clauses.").  The right of access to the courts is limited and applies only to direct criminal appeals, habeas petitions, and civil rights actions pursuant to 42 U.S.C.

§ 1983. <u>Lewis v. Casey</u>, 518 U.S. 343, 354-55 (1996).

Here, Plaintiff alleges that Defendant Benavides deprived or denied Plaintiff two court-ordered telephonic court conference calls on December 23, 2013 and January 6, 2014 for Fresno County Superior Court Case Number 13CECG02602. (ECF No. 1, at 16.) However, Plaintiff alleges that Case Number 13CECG02602 is a state-law conversion action. (ECF No. 1, at 6.) Therefore, since Plaintiff's state court action is not a direct criminal appeal, a habeas petition, or civil rights action, the constitutional right to access the court does not apply to Plaintiff's state court action. <u>Lewis</u>, 518 U.S. at 354-55. Consequently, Plaintiff has failed to state a cognizable claim for a violation of his constitutional right of access to the courts against Defendant Benavides.

### Q. State Regulations

Plaintiff alleges violations of various prison regulations by various defendants. However, § 1983 only provides a cause of action for the deprivation of federally protected rights. "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, [s]ection 1983 offers no redress." <u>Sweaney v. Ada County, Idaho</u>, 119 F.3d 1385, 1391 (9th Cir. 1997) (quoting <u>Lovell v. Poway Unified Sch. Dist.</u>, 90 F.3d 367, 370 (9th Cir. 1996)); <u>see</u> <u>Davis v. Kissinger</u>, No. CIV S–04–0878-GEB-DAD-P, 2009 WL 256574, at *12 n. 4 (E.D. Cal. Feb. 3, 2009). Nor is there any liability under § 1983 for violating prison policy. <u>Cousins v. Lockyer</u>, 568 F.3d 1063, 1070 (9th Cir. 2009) (quoting <u>Gardner v. Howard</u>, 109 F.3d 427, 430 (8th Cir. 1997)). Thus, the violation of any state law or regulation that reaches beyond the rights protected by the federal Constitution and/or the violation of any prison regulation, rule or policy does not amount to a cognizable claim under federal law, nor does it amount to any independent cause of action under § 1983.

### R. Declaratory Relief

Plaintiff's complaint seeks a declaratory judgment. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." <u>Eccles v. Peoples Bank of Lakewood Village</u>, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy

33

faced by the parties." <u>United States v. Washington</u>, 759 F.2d 1353, 1357 (9th Cir. 1985).

If this action reaches trial and the jury returns a verdict in favor of Plaintiff, then that verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that any named Defendant violated Plaintiff's rights is unnecessary.

**IV.** **Conclusions and Order**

Since Plaintiff is entitled to amend his complaint once as a matter of right pursuant to Rule 15(a)(1)(A), Plaintiff's motion to add a party is meritorious.

Based on the foregoing, the Court finds that Plaintiff has stated cognizable claims as follows: (1) for excessive force against Defendants Santos, Leon, Benavides, Hill, Salas, Luna, Lopez, Kennedy, Benjinez, and Trinidad, (2) for violation of Plaintiff's First Amendment right to free exercise of religion against Defendants Salas, Bejinez, Trinidad, and Deshazo, (3) for unconstitutional conditions of confinement against Defendants Deshazo, Bejinez, Trinidad, and Benavides, (4) for deliberate indifference to serious medical needs against Defendants Benavides, Bejinez, Deshazo, Hoggard, and Trinidad, and (5) for failure to intervene against Espinoza, Luna, and Newton. However, Plaintiff does not state any other cognizable claims against any other Defendant. Plaintiff will be granted leave to amend his complaint to cure the identified deficiencies, to the extent that he is able to do so in good faith. <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130 (9th Cir. 2000).

Plaintiff is given the choice to file a first amended complaint, or to proceed on the claims found cognizable as identified by the Court, which will result in voluntarily dismissal of all other claims and defendants per Rule 41(a)(1)(i) of the Federal Rules of Civil Procedure. Plaintiff must either notify the Court of his decision to proceed on the cognizable claims or file a first amended complaint **within thirty (30) days** of the service of this order. If Plaintiff needs an extension of time to comply with this order, Plaintiff shall file a motion seeking an extension of time no later than **thirty (30) days** from the date of service of this order.

If Plaintiff wishes to file a first amended complaint, any such first amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, <u>Iqbal</u>, 556 U.S. at 678-79. Although accepted as true,

the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey v. Maricopa Cnty., 693 F.3d 896, 927 (9th Cir. 2012). Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1.  Plaintiff's motion to amend to add defendant R. Newton is GRANTED;

2.  The Clerk's office shall send Plaintiff a complaint form;

3.  Within **thirty (30) days** from the date of service of this order, Plaintiff must either:

    a.  File a first amended complaint curing the deficiencies identified by the Court in this order; or

    b.  Notify the Court in writing that he does not wish to file a first amended complaint and that he is willing to proceed only on the cognizable claims: (1) for excessive force against Defendants Santos, Leon, Benavides, Hill, Salas, Luna, Lopez, Kennedy, Benjinez, and Trinidad, (2) for violation of Plaintiff's First Amendment right to free exercise of religion against Defendants Salas, Bejinez, Trinidad, and Deshazo, (3) for unconstitutional conditions of confinement against Defendants Deshazo, Bejinez, Trinidad, and Benavides, (4) for deliberate indifference to serious medical needs against Defendants Benavides, Bejinez, Deshazo, Hoggard, and Trinidad, and (5) for failure to intervene against Espinoza, Luna, and Newton, as identified by the Court as viable/cognizable in this order, which will result in his voluntary dismissal of all other defendants and all other claims, per Rule 41(a)(1)(i) of the Federal Rules of Civil Procedure; and

35

4.     If Plaintiff fails to comply with this order, he will be allowed to proceed only on the claims found cognizable herein and it will be recommended that all other claims and defendants be dismissed with prejudice.

IT IS SO ORDERED.

Dated:   **October 17, 2019**          /s/ *Barbara A. McAuliffe*
                                         UNITED STATES MAGISTRATE JUDGE