UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LACEDRIC WILLIAM JOHNSON,

    Plaintiff,

    v.

SCOTT FRAUENHEIM, *et al.*,

    Defendants.

Case No. 1:18-cv-01477-AWI-BAM (PC)

FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANT'S MOTION TO DISMISS WITHOUT LEAVE TO AMEND

(ECF No. 19)

**FOURTEEN (14) DAY DEADLINE**

Plaintiff LaCedric William Johnson is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants Bejinez's, Benavides's, Deshazo's, Espinoza's, Hill's, Hoggard's, Kennedy's, Leon's, Lopez's, Luna's, Newton's, Salas's, Santos's, and Trinidad's filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that this action is barred by the applicable statute of limitations. (ECF No. 19.)

I.    **Introduction**

Plaintiff initiated this action on October 26, 2018. (ECF No. 1.) On October 17, 2019, the Court screened Plaintiff's complaint and found that Plaintiff alleged cognizable claims: (1) for excessive force against Defendants Santos, Leon, Benavides, Hill, Salas, Luna, Lopez, Kennedy, Bejinez, and Trinidad, (2) for violation of Plaintiff's First Amendment right to free exercise of religion against Defendants Salas, Bejinez, Trinidad, and Deshazo, (3) for unconstitutional conditions of confinement against Defendants Deshazo, Bejinez, Trinidad, and Benavides, (4) for

1

deliberate indifference to serious medical needs against Defendants Benavides, Bejinez, Deshazo, Hoggard, and Trinidad, and (5) for failure to intervene against Espinoza, Luna, and Newton. (ECF No. 8.) However, Plaintiff failed to state any other cognizable claims against any other Defendants. (Id.) Plaintiff was ordered to either file a first amended complaint or notify the Court in writing of his willingness to proceed only on the claims found to be cognizable by the Court. (Id. at 35-36.)

On October 28, 2019, Plaintiff notified the Court in writing of his willingness to proceed only on the cognizable claims identified by the Court. (ECF No. 11.)

On October 30, 2019, based on Plaintiff's written willingness to proceed only on the cognizable claims, the Court issued an order stating that this action would proceed on Plaintiff's complaint: 1) for excessive force against Defendants Santos, Leon, Benavides, Hill, Salas, Luna, Lopez, Kennedy, Bejinez, and Trinidad, (2) for violation of Plaintiff's First Amendment right to free exercise of religion against Defendants Salas, Bejinez, Trinidad, and Deshazo, (3) for unconstitutional conditions of confinement against Defendants Deshazo, Bejinez, Trinidad, and Benavides, (4) for deliberate indifference to serious medical needs against Defendants Benavides, Bejinez, Deshazo, Hoggard, and Trinidad, and (5) for failure to intervene against Espinoza, Luna, and Newton. (ECF No. 12.) Further, the Court dismissed all other claims and defendants from this action. Fed. R. Civ. P. 15(a), 41(a)(1)(A)(i); see Hells Canyon Preservation Council v. U.S. Forest Service, 403 F.3d 683, 687-88 (9th Cir. 2005). (Id.)

On November 4, 2019, the Court issued an order finding service of Plaintiff's complaint appropriate and directing e-service on Defendants Bejinez, Benavides, Deshazo, Espinoza, Hill, Hoggard, Kennedy, Leon, Lopez, Luna, Newton, Salas, Santos, and Trinidad. (ECF No. 16.)

On January 9, 2020, as noted above, Defendants Bejinez, Benavides, Deshazo, Espinoza, Hill, Hoggard, Kennedy, Leon, Lopez, Luna, Newton, Salas, Santos, and Trinidad filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that this action is barred by the applicable statute of limitations. (ECF No. 19.) Plaintiff filed an opposition to Defendant's motion to dismiss on February 6, 2020, and Defendants filed a reply on February 11, 2020. (ECF Nos. 23, 24.) Accordingly, Defendants' motion to dismissed is deemed submitted

1  for decision.  Local Rule 230(l).

2  **II.     <u>Legal Standard</u>**

3        A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of a

4  claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of

5  sufficient facts alleged under a cognizable legal theory.  <u>Conservation Force v. Salazar</u>, 646 F.3d

6  1240, 1241-42 (9th Cir. 2011) (quotation marks and citations omitted).  In resolving a Rule

7  12(b)(6) motion, a court's review is generally limited to the operative pleading.  <u>Daniels-Hall v.</u>

8  <u>National Educ. Ass'n</u>, 629 F.3d 992, 998 (9th Cir. 2010); <u>Sanders v. Brown</u>, 504 F.3d 903, 910

9  (9th Cir. 2007); <u>Schneider v. California Dept. of Corr.</u>, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

10  "A court may, however, consider certain materials – documents attached to the complaint,

11  documents incorporated by reference in the complaint, or matters of judicial notice – without

12  converting the motion to dismiss into a motion for summary judgment."  <u>United States v. Ritchie</u>,

13  342 F.3d 903, 908 (9th Cir. 2003).

14        To survive a motion to dismiss, a complaint must contain sufficient factual matter,

15  accepted as true, to state a claim that is plausible on its face.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678

16  (2009) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)) (quotation marks

17  omitted); <u>Conservation Force</u>, 646 F.3d at 1242; <u>Moss v. U.S. Secret Service</u>, 572 F.3d 962, 969

18  (9th Cir. 2009).  The Court must accept the factual allegations as true and draw all reasonable

19  inferences in favor of the non-moving party, <u>Daniels-Hall</u>, 629 F.3d at 998; <u>Sanders</u>, 504 F.3d at

20  910; <u>Morales v. City of Los Angeles</u>, 214 F.3d 1151, 1153 (9th Cir. 2000), and in this Circuit, pro

21  se litigants are entitled to have their pleadings liberally construed and to have any doubt resolved

22  in their favor, <u>Wilhelm v. Rotman</u>, 680 F.3d 1113, 1121 (9th Cir. 2012); <u>Watison v. Carter</u>, 668

23  F.3d 1108, 1112 (9th Cir. 2012); <u>Silva v. Di Vittorio</u>, 658 F.3d 1090, 1101 (9th Cir. 2011); <u>Hebbe</u>

24  <u>v. Pliler</u>, 627 F.3d 338, 342 (9th Cir. 2010).

25  **III.    <u>Discussion</u>**

26       **A.     Summary of Plaintiff's Complaint**

27       Plaintiff is currently housed at California State Prison, Solano.  Plaintiff alleges that the

28  events at issue took place at Pleasant Valley State Prison ("PVSP").

Plaintiff alleges as follows: Custody staff at PVSP have a longstanding practice of using pat-down and unclothed body searches to initiate assaults against targeted inmates as a means of intimidation, harassment, and retaliation resulting in false 115 Rules Violation Reports alleging "battery of peace officer" and disciplinary sanctions, i.e., administrative segregation placement, Security Housing Unit term, increased classification score, forfeiture of good-time/worktime credits, possible transfer and referral to the District Attorney for prosecution. At the time of this incident, Plaintiff fit the criteria of a "targeted inmate" because he was actively pursuing a conversion action in the Superior Court of California, County of Fresno against two PVSP prison guards who intentionally discarded legal files to five active cases, religious property, and personal property.

On January 29, 2014, at 0930 hours, Facility Bravo (Facility B) yard, Defendant Benavides was conducting a controlled yard release with random pat-down searches being conducted by approximately ten correctional officers. During the Building 1 yard release, Plaintiff forgot his identification card in his cell. Since inmates must carry their identification card on their person, Plaintiff summoned Defendant Newton, the Building 1 Control Tower Officer, for an unlock, explaining that he had forgotten his identification card in his cell and requesting an unlock to gain access. Defendant Newton denied Plaintiff's request.

Defendant Santos, the Building 1 First Tier Floor Officer, ordered Plaintiff to "strip-out" in the lower B section shower. Plaintiff took off all of his clothes except for his boxers, gave them to Defendant Santos and Defendant Leon, the Second Tier Officer, along with his legal folder, and stood waiting until the search of his clothing and legal folder was completed. Defendant Santos approached the shower and told Plaintiff, "Give me your boxers," just as Defendant Luna and Defendant Espinoza, a female officer, entered the building and looked towards the shower and the ongoing search. (ECF No. 1, at 7.) Plaintiff stated, "One moment out of respect for the women, I'm Muslim." (Id.) Defendant Santos then opened the shower gate and barked "Cuff Up! Cuff Up! Get Down!" (Id.) When Plaintiff asked what he had done, Defendant Santos emptied a canister of O.C. pepper spray directly in Plaintiff's face, blinding him. Plaintiff

4

stumbled blindly to the back of the shower, turned the water on, and rinsed his eyes, with his back to Defendant Santos. Defendant Santos then entered the shower and began striking Plaintiff across the knee of his left leg with rapid, hard successive blows with his MEB expandable baton, which caused Plaintiff's surgically repaired knee to weaken, become painful, and a wound on the knee to open up and bleed. When Plaintiff turned around, Defendant Santos left the shower.

At that point, Defendant Leon emptied a canister of O.C. pepper spray into Plaintiff's face, blinding Plaintiff and causing Plaintiff to inhale mace through his nose, choking Plaintiff, as Defendant Leon yelled for Plaintiff to "Get the fuck down!" (Id.) Plaintiff turned, placed his head under the water to rinse his eyes, due to the burning and blindness, and attempted to comply with the order to prone out on the shower, but pain from the injured knee and leg made compliance difficult. Defendant Santos entered the shower for a second time and began beating Plaintiff across the arm, wrist, elbow, and body with his MEB baton. When Plaintiff stood up and raised his arms to protect himself from blows to his head, Defendant Santos ran out of the shower again.

As Plaintiff was being beaten by Defendant Santos, Defendant Espinoza made a call over her radio of a disturbance in Building 1. All inmates were ordered down. Defendant Benavides and approximately 10 other officers who were outside of the building entered the building, waving batons and shaking up their canisters of O.C. pepper spray. The officers formed a skirmish line in front of the shower, yelling "Get down!" (Id. at 8.) Defendant Santos then sprayed Plaintiff in the face with another canister of O.C. pepper spray. Further, the officers who had responded to Defendant Espinoza's call also emptied numerous canisters of O.C. pepper spray directly into Plaintiff's face, further blinding, burning, and choking Plaintiff, as they yelled "Get down!" (Id.) As Plaintiff attempted to prone out in a pool of pepper spray, Defendant Santos entered the shower for a third time and began beating Plaintiff across the arms and legs with his MEB baton. Defendant Santos then grabbed Plaintiff by the ankle and dragged Plaintiff out of the shower and onto the dayroom floor.

Defendant Hill and Defendant Salas then jumped on Plaintiff's back, causing pain, and both began punching Plaintiff in the face and head. Plaintiff's head bounced off of the concrete

floor approximately three times.  Out of fear, Plaintiff attempted to protect his left wrist, which was swollen, throbbing, and disfigured, by placing it under his torso.  While Plaintiff was using his right arm to protect his head and face from punches to the head and face by Defendants Hill and Salas, Defendant Benavides grabbed his right hand and wrist and held it.  Defendants Benavides, Luna, Lopez, and Salas were punching and pulling on Plaintiff's wrist, while yelling, "Stop resisting!"  (Id. at 9.)  At no time did any of the surrounding officers intervene to stop the beating of Plaintiff.

When an unknown officer began kicking Plaintiff in the genitalia, Plaintiff began twisting his hips, making his genitalia a moving target, to avoid further contact.  Other officers began kicking and stomping Plaintiff's legs and torso until Plaintiff became weak.  Defendant Kennedy continued kicking Plaintiff.  Defendants Benavides, Hill, Lopez, Luna, and Salas continued punching Plaintiff and pulling on Plaintiff's harms.  Defendant Hill stated: "He's screaming like a bitch."  (Id.)  Plaintiff's wrists were then cuffed behind his back, extremely tight.  Defendant Benavides grabbed Plaintiff's ankles and Officer Ramirez placed flex cuffs on Plaintiff's ankles, tightly, which dug into Plaintiff's flesh, causing bleeding and pain.

Medical staff were summoned.  Defendant Hoggard and three Licensed Vocational Nurses, Hansen, Liebold, and Sharp, brought a gurney.  Defendants Benavides and Santos, and Officer Ramirez lifted Plaintiff, placed Plaintiff in a stokes litter, and then placed him on the gurney.  Defendant Salas took Plaintiff's boxer shorts off and placed the pepper-spray soaked underwear over Plaintiff's head, burning Plaintiff's face.  Plaintiff was naked in the presence of three Licensed Vocational Nurses, Hansen, Liebold, and Sharp, and Defendant Espinoza, all women.  Nothing was placed over Plaintiff to cover his genitalia.

Defendants Bejinez and Trinidad then wheeled Plaintiff, naked, on the gurney across the yard in the presence of the inmate population, custody staff of both genders, and support services staff.  Plaintiff was taken to the Facility B medical clinic, where he arrived at approximately 0945 hours.  Defendant Deshazo was the assigned medical triage coverage officer.

Defendants Bejinez and Trinidad lifted Plaintiff off of the gurney in the stokes litter and slammed Plaintiff to the ground in the holding tank.  The already tight handcuffs that were under

1  Plaintiff's body clicked even tighter, which caused the handcuffs to dig deeper into Plaintiff's
2  injured wrist, flesh, and bone, causing excruciating pain.  Plaintiff asked Defendant Deshazo to
3  loosen, or remove, the cuffs and to summon medical staff for treatment.  However, Defendant
4  Deshazo stated "No.  And shut up!" while Plaintiff was screaming in pain, hyperventilating,
5  coughing, and sweating.  Defendant Deshazo placed a spit mask hood over Plaintiff's head, in
6  violation of CDCR's Department Operation Manual, which forbids placement of a spit hood on
7  an inmate suffering from pepper spray exposure.  Plaintiff was showing apparent signs of
8  respiratory distress and weakness from the beating.  Plaintiff was choking, gagging for air,
9  hyperventilating, sweating, phlegm and mucus was sticking to the spit hood mask, which clogged
10  up the mask and caused Plaintiff to suffocate and fight for air.  Plaintiff's lungs are damaged by
11  Valley Fever spores.  Plaintiff was in and out of consciousness.  Defendant Deshazo disregarded
12  Plaintiff's pleas for help while the hand and flex ankle cuffs were cutting into Plaintiff's flesh, the
13  spit hood was restricting the oxygen to Plaintiff's lungs and brain, Plaintiff was burning all over
14  from excessive pepper spray, Plaintiff's head was throbbing, and Plaintiff was bleeding and
15  swelling.  Defendant Deshazo just ignored Plaintiff, even though he was within 10 feet of
16  Plaintiff.  At no time did Defendant Deshazo cover up Plaintiff's genitalia.  Instead, Defendant
17  Deshazo left Plaintiff hog-tied, naked, and suffering for an hour.  In fact, Defendant Deshazo
18  opened the door to medical and let another inmate in, who witnessed Plaintiff, naked and
19  suffering on the floor.
20       All inmates were ordered to lock up for a yard recall over the PA system.  Another inmate,
21  who witnessed Plaintiff being wheeled across the yard naked, also witnessed the responding
22  officers exit Building 1 high-fiving and fist bumping.
23       At approximately 1045 hours, Defendants Bejinez and Trinidad had a conversation with
24  Defendant Benavides at the Facility B medical entrance.  Then, Defendants Bejinez and Trinidad
25  grabbed a gurney, placed Plaintiff on the gurney, and wheeled him, still naked, across the yard to
26  the gym for decontamination.  Defendants Bejinez and Trinidad removed the spit mask.  After
27  one of the Defendants stated that the showers were not working, they left Plaintiff lying in the
28  stokes litter on the gurney suffering and sat down and held a conversation among themselves.

Defendant Benavides entered the gym and told Defendants Bejinez and Trinidad to remove Plaintiff's cuffs, take Plaintiff out of the stokes litter, and place Plaintiff on the bench. Plaintiff could not hold himself up and was slumped over because he was weak and could not support himself with his injured arm, wrist, knees, or leg. Defendants Bejinez and Trinidad then just sat back down and resumed their personal conversation.

At that point, Gomez, who is not a defendant, entered the gym, assessed the situation, filled a bucket with water from a sink, and poured it over Plaintiff's head. After Gomez poured a second bucket of water over Plaintiff, Plaintiff requested that Gomez pour a third bucket of water over him because his penis was burning. Plaintiff informed Gomez that the burning was unbearable. However, Gomez stated that: "You'll be better off without water, water agitates the chemical." Plaintiff's eyes were never rinsed.

Defendant Hoggard then entered the gym, stopped approximately ten feet away from Plaintiff, wrote something down on a piece of paper, and exited the gym. Plaintiff assumed that Defendant Hoggard, who is a nurse, was going to return to provide medical care, but Defendant Hoggard did not. Instead, as soon as Defendant Hoggard exited the gym, Defendant Benavides entered the gym, told Defendants Bejinez and Trinidad to prepare Plaintiff for transport to Delta-4 ad-seg (administrative segregation) unit, and gave Plaintiff a pair of boxer shorts. Plaintiff was unable to put the boxer shorts on without assistance.

Defendant Hoggard's CDCR 7219 Injury/Assessment Medical Report of Injuries only indicated that Plaintiff had a scratch/abrasion on his left knee and O.C. pepper spray on his torso. Plaintiff asserts that this orchestrated plan of action between Defendants Benavides and Hoggard to minimize Plaintiff's documented injuries was done in order to isolate Plaintiff in ad-seg and to prevent Plaintiff from getting medical care, which would have opened up a serious investigation into excessive force and the completion of an excess force video deposition as required by prison regulations.

At approximately 1200 hours, Defendants Bejinez and Trinidad had to carry Plaintiff into the Delta 4 segregation unit by putting their shoulders under his arms in order to drag Plaintiff.

Plaintiff was found unresponsive in Cell #127 at 1600 hours by a Delta 4 unit officer.

After officers entered the cell, Delta 4 unit medical staff, Licensed Vocational Nurse D. Hall was summoned. After Nurse Hall ascertained that Plaintiff's injuries were severe and his vitals were high, Nurse Hall made arrangements for Plaintiff to be taken to PVSP Correctional Treatment Center ("CTC"). Plaintiff's visible signs of injury were assessed and documents by Registered Nurse K. Bradley on a CDCR 7219 Injury/Assessment Report. Plaintiff was evaluated by Dr. Ola, given a shot for pain management, and then sent to Community Regional Medical Center in Fresno. Plaintiff was admitted to the hospital, monitored throughout the night, and then released on January 30, 2014.

On January 30, 2014, Plaintiff was housed at PVSP CTC for medical evaluation and monitoring. The physical signs of trauma to Plaintiff's head and body were more prominent. Plaintiff's eyes were black and blue, he had broken blood vessels in both eyes, his left wrist was deformed and swollen, he had a loss of feeling in his left hand, he had a numb and tingling sensation in his left extremities, a bruised left bicep and rib, his left knee was swollen with two lacerations, his left shin was swollen, he had a right inside ankle gash, an intense headache and pain all over his body, and his eyes and body were burning from pepper spray. Facility B. Captain A. Shimmins personally came to CTC, visually observed Plaintiff, issued Plaintiff a CDCR 114-D Lockup order, and told Plaintiff that Plaintiff would be released to ad-seg once released by medical and that Plaintiff would be issued a CDCR 115 Rules Violation Report for "Battery on a Peace Officer."

On January 31, 2014, at 1000 hours, Plaintiff was allowed to take a shower. After about 20 minutes, the effects of the pepper spray fully wore off.

On February 3, 2014, at 1000 hours, a doctor inquired about Plaintiff's pain level based on Plaintiff's apparent head and eye injuries. Plaintiff told the doctor that he felt dizzy, severe headache, and blurred vision. The doctor prescribed Plaintiff ibuprofen, acetaminophen, and made Plaintiff a specialty clinic appointment to see optometry.

At 1100 hours on February 3, 2014, Defendant Santos, escorted by I. Gonzalez, a defendant in Plaintiff's Fresno County Superior Court conversion action, case number 13CECG02602, provided Plaintiff with a CDCR 1083 Property Inventory Receipt. After Plaintiff

noticed that there was no documentation of his legal files, books, and religious materials, he refused to sign the property receipt.

On February 5, 2014, Defendant Santos, along with A. Martinez, another defendant in Plaintiff's Fresno County Superior Court conversion action, case number 13CECG02602, brought Plaintiff's property to Delta 4 unit in order to bring Plaintiff's property within compliance of the 6 cubic feet property guideline policy. Plaintiff alleges that it was apparent that some of his property was already missing. Defendant Santos and A. Martinez issued an ultimatum: "Throw it away or send it home," and began discarding Plaintiff's property. (Id. at 14.)

On February 6, 2014, Plaintiff was brought before the Initial Classification Committee ("ICC") in Delta 4 unit for ad-seg review. The ICC consisted of, but was not limited to, Warden Frauenheim, Chief Deputy Warden R. Fisher, and Facility B Captain Shimmins. Plaintiff was informed that he would be held in ad-seg pending charges and adjudication of CDCR 115 Rules Violation Report, Log Number #14-FB-01-080, for "Battery on a Peace Officer Resulting in the Use of Force" on January 29, 2014. When Plaintiff stated that he was assaulted by staff and the reports are falsified, Fisher told Plaintiff that Plaintiff should save his statements for a 602 grievance or the Rules Violation Report hearing.

On February 7, 2014, Plaintiff filed a health care staff complaint against Defendant Hoggard for leaving Plaintiff in the hands of custody staff to suffer from his various injuries and pepper spray exposure and not providing any medical care.

On February 12, 2014, Plaintiff was issued CDCR 115 Rules Violation Report, Log Number #14-FB-01-080, for "Battery on a Peace Officer Resulting in the Use of Force." The Rules Violation Report was signed by Defendant Santos and dated for January 29, 2014. At this point, Plaintiff became aware of the extent of Defendant Santos' falsified allegations in his report to cover up the excessive force. Defendant Santos' false misrepresentation were presented to the Fresno County District Attorney and presented at the Rules Violation Report disciplinary hearing.

On February 18, 2014, Plaintiff was seen by the mental health department and prescribed Citalopram for severe depression and anxiety and weekly therapy sessions due to the trauma Plaintiff suffered. Also, on February 18, 2014, Plaintiff was taken to the specialty clinic for an

optometry examination.  It was ascertained that Plaintiff suffered eye damage from the assault and a bi-focal was added to his prescription.  Plaintiff also suffered a stigmatism.

On February 19, 2014, Plaintiff was issued a CDCR 837 Crime/Incident Report, Log # PVSP-FBP-14-01-0022, dated 1/29/14, and which contained staff reports from Benavides, Bejinez, Erickson, Espinoza, Hill, Kennedy, Leon, Lopez, Luna, Newton, Ramirez, Salas, Santos, Hansen, Hoggard, Liebold, and Sharp.  Plaintiff alleges that this was the first opportunity he had to view the coordinated cover up that followed the assault.  Plaintiff states that the reports were falsified in order to cover up the systematic brutality by guards.

On March 11, 2014, Sergeant Clark, along with Correctional Officer Ruggles, conducted an excessive force video deposition in Delta 4 unit at 1925 hours.  On March 18, 2014, Sergeant Clark and Correctional Officer Ruggles conducted a second excessive force video deposition because they "ran out of tape on the last one."  (Id. at 16.)

On March 20, 2014, Plaintiff sent an excessive force staff complaint to Warden Frauenheim.

Also, on March 20, 2014, Plaintiff requested a voluntary dismissal of Fresno County Superior Court Case No. 13CECG02602 because he was suffering from severe depression, severe headaches, fear of further retaliation, and inadequate law library provisions that limited him to three items of legal resources per week.  Additionally, Plaintiff alleges that Defendant Benavides denied Plaintiff two court-ordered telephone court conference calls in Case No. 13CECG02602, hindering Plaintiff's access to the court on December 23, 2013 and January 6, 2014.  On April 23, 2014, the voluntary dismissal without prejudice of Case No. 13CECG02602 was granted.

Also, on April 23, 2014, Plaintiff's staff complaint (PVSP 14-0683) against Defendant Santos for falsified reports, assault, and battery was granted in part.

On September 18, 2014, medical staff issued Plaintiff a second pair of eyewear to conclude the correction of the damage to his eyes caused by the January 29, 2014 assault.

In September 2015, Plaintiff needed an operation to remove a lipoma tumor lesion in his right lateral flank, where Defendant Kennedy and other officers kicked Plaintiff in the rib area with military style boots.

On September 22, 2015, Plaintiff suffered temporary blindness in his right eye.  He was diagnosed with ocular migraines as a result of defendants beating Plaintiff in the head.

**B.     Requests for Judicial Notice**

Federal Rule of Evidence 201(d) permits the Court to "take judicial notice at any stage of the proceeding."  "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

It is well established that a court may take judicial notice of its own records.  Trigueros v. Adams, 658 F.3d 983, 987 (9th Cir. 2011); Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006); Chandler v. United States, 378 F.2d 906, 909 (9th Cir. 1967). Therefore, the Court grants Defendants' motion to take judicial notice of court documents and takes judicial notice of the following documents (Request for Judicial Notice (RJN), ECF No. 20, Exs. A-B):

**Exhibit A.**     The court docket for Johnson v. Frauenheim, Case No. 1:14-cv-01601-LJO-SKO (E.D. Cal) ("Johnson I").

**Exhibit B.**     Plaintiff's first amended complaint, filed on November 24, 2014, in Johnson v. Frauenheim, Case No. 1:14-cv-01601-LJO-SKO (E.D. Cal.).

Further, the Court also grants Plaintiff's motion to take judicial notice of the Ninth Circuit Court of Appeals Memorandum Opinion, filed on September 18, 2018, in Johnson v. Bejinez, Case No. 17-16654 (9th Cir.).  (ECF No. 23, at 27-29.)

**C.     Statute of Limitations**

Defendants Bejinez, Benavides, Deshazo, Espinoza, Hill, Hoggard, Kennedy, Leon, Lopez, Luna, Newton, Salas, Santos, and Trinidad contend that Plaintiff's complaint fails to state any cognizable claim for relief because the complaint is barred by the applicable statute of limitations, including all applicable tolling.  In his opposition, Plaintiff asserts that his complaint is not barred by the applicable statute of limitations because he is entitled to 20 months of equitable tolling while he was completing the mandatory exhaustion process, he is entitled to

equitable tolling during the period of time when <u>Johnson v. Frauenheim</u>, Case No. 1:14-cv-01601-LJO-SKO (E.D. Cal.) ("<u>Johnson I</u>") was pending, and because the Ninth Circuit Court of Appeals stated that the judgment in <u>Johnson I</u> was a "dismissal without prejudice to Johnson refiling the action."  (ECF No. 23, at 1, 3.)

Initially, the Court begins by determining when Plaintiff's claims for excessive force against Defendants Santos, Leon, Benavides, Hill, Salas, Luna, Lopez, Kennedy, Bejinez, and Trinidad, for violation of Plaintiff's First Amendment right to free exercise of religion against Defendants Salas, Bejinez, Trinidad, and Deshazo, for unconstitutional conditions of confinement against Defendants Deshazo, Bejinez, Trinidad, and Benavides, for deliberate indifference to serious medical needs against Defendants Benavides, Bejinez, Deshazo, Hoggard, and Trinidad, and for failure to intervene against Espinoza, Luna, and Newton – all of which are brought pursuant to 42 U.S.C. § 1983 – accrued.

Federal law determines when a civil rights claim brought pursuant to 42 U.S.C. § 1983 accrues.  <u>Wallace v. Kato</u>, 549 U.S. 384, 388 (2007) ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law."); <u>Western Ctr. for Journalism v. Cederquist</u>, 235 F.  1156 (9th Cir. 2000) ("While the statute of limitations period is derived from state law, federal law determines when the statute of limitations period accrues.").  Pursuant to "federal rules conforming in general to common-law tort principles[,]" "it is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief."  <u>Wallace</u>, 549 U.S. at 388 (internal quotation marks, brackets and citations omitted).  Put another way, "[u]nder federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action."  <u>TwoRivers v. Lewis</u>, 174 F.3d 987, 991 (9th Cir. 1999).

In this case, Plaintiff's claims are predicated on events that occurred on January 29, 2014. (ECF No. 1, at 3-12.)  Further, Plaintiff states in his opposition to the motion to dismiss that "[i]njury accrued January 29, 2014[.]"  (ECF No. 23, at 2.)  Therefore, Plaintiff's § 1983 claims were complete, and accrued, on January 29, 2014.  <u>See Belanus v. Clark</u>, 796 F.3d 1021, 1025 (9th Cir. 2015) (stating that, "an action ordinarily accrues on the date of the injury" (citation and

1    internal brackets omitted)).

2            Next, the Court must apply the statute of limitations applicable to each claim in order to

3    determine whether the statute of limitations lapsed before Plaintiff filed this action.  With regards

4    to Plaintiff's § 1983 claims, the Court applies California's "statute of limitations for personal

5    injury actions, along with the forum state's law regarding tolling, including equitable tolling,

6    except to the extent any of these laws is inconsistent with federal law."  Canatella v. Van De

7    Kamp, 486 F.3d 1128, 1132 (9th Cir. 2007) (citation and internal quotation marks omitted); Jones

8    v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004) (stating that courts apply a state's statute of

9    limitations for personal injury actions to claims brought pursuant to 42 U.S.C. § 1983).

10   Plaintiff's § 1983 claims are subject to the two-year statute of limitations set forth in California

11   Code of Civil Procedure § 335.1.  See Canatella, 486 F.3d at 1132.

12           In this case, the Court has already determined that Plaintiff's § 1983 claims accrued on

13   January 29, 2014.  Plaintiff filed the instant action on October 26, 2018, approximately four years

14   and nine months after Plaintiff's § 1983 claims accrued.  Therefore, Plaintiff's federal and state

15   law claims are time-barred unless Plaintiff is entitled to approximately two years and nine months

16   of tolling.

17           1.    Statutory Tolling Pursuant to California Code of Civil Procedure § 352.1

18           California Code of Civil Procedure § 352.1(a) provides that the applicable statute of

19   limitations is statutorily tolled for up to two years when a plaintiff is "imprisoned on a criminal

20   charge, or in execution under the sentence of a criminal court for a term less than for life," at the

21   time that the claim accrues.

22           In this case, Plaintiff's claims accrued on January 29, 2014, while he was incarcerated at

23   Pleasant Valley State Prison, and it appears that Plaintiff has been incarcerated without

24   interruption from January 29, 2014 through October 26, 2018, the date this action was filed.  In

25   fact, Defendants concede in their motion to dismiss that Plaintiff is entitled to the maximum 2-

26   year tolling period established by California Code of Civil Procedure § 352.1(a).  (ECF No. 19-1,

27   at 5.)  Therefore, Plaintiff is entitled to two years of statutory tolling pursuant to California Code

28   of Civil Procedure § 352.1(a).

                                                    14

Consequently, since the tolling provision of California Code of Civil Procedure § 352.1(a) "operates to delay the running of the limitations period[,]" the two-year statute of limitations applicable to Plaintiff's claims did not start running until January 29, 2016, two years after Plaintiff's claims accrued on January 29, 2014.  Reece v. Basi, No. 2:11-cv-2712 GEB AC, 2013 WL 1339048, at *6 (E.D. Cal. Apr. 3, 2013).  If Plaintiff is not entitled to any additional statutory or equitable tolling, then the statute of limitations applicable to Plaintiff's claims expired on January 29, 2018, approximately nine months before Plaintiff filed this action on October 26, 2018.

### 2.    Equitable Tolling

"Equitable tolling under California law operates independently of the literal wording of the Code of Civil Procedure to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness."  Jones v. Blanas, 393 F.3d 918, 928 (9th Cir. 2004) (citations and internal quotation marks omitted).  Therefore, "California courts apply equitable tolling to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice."  Id. (citations and internal quotation marks omitted).

### a.    Equitable Tolling During Pendency of Mandatory Exhaustion Process

Under California law, "[w]here exhaustion of an administrative remedy is mandatory prior to filing suit, equitable tolling is automatic: 'It has long been settled in this and other jurisdictions that whenever the exhaustion of administrative remedies is a prerequisite to the initiation of a civil action, the running of the limitations period is tolled during the time consumed by the administrative proceeding.'"  McDonald v. Antelope Valley Community College, 45 Cal.4th 88, 101 (2008) (citation omitted); see Cal. Code. Civ. Proc. § 356 (tolling applies whenever commencement of an action is statutorily prohibited).  Therefore, since the Prison Litigation Reform Act ("PLRA") requires that prisoners exhaust their available administrative remedies prior to filing suit, "the applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process."  Brown v. Valoff, 422 F.3d 926, 943 (9th Cir. 2005); see Jones v. Bock, 549 U.S. 199, 202 (2007) (stating that "the PLRA … requires prisoners to exhaust prison grievance procedures before filing suit").

1   In this case, as stated above, Plaintiff is entitled to two years of statutory tolling due to his

2   "disability" of imprisonment pursuant to California Code of Civil Procedure § 352.1(a).

3   Therefore, the 2-year statute of limitations applicable to Plaintiff's § 1983 claims was statutorily

4   tolled from January 29, 2014 to January 29, 2016.

5       Plaintiff also seeks to tack onto the statutorily tolled period, a period of <u>equitably</u> tolling

6   the statute of limitations from January 29, 2014 through August 26, 2015, while he completed the

7   administrative exhaustion process required by the PLRA.  (ECF No. 23, at 2.)   Defendants argue

8   that Plaintiff is not entitled any equitable tolling while he pursued his administrative remedies

9   because the statute of limitations applicable to Plaintiff's claims was already being statutorily

10  tolled for the entire time that Plaintiff was pursuing his administrative remedies.  (ECF No. 19-1,

11  at 7-8.)

12       The period of equitable tolling that Plaintiff claims he is entitled to – January 29, 2014

13  through August 26, 2015 – is entirely subsumed within the two-year period of statutory tolling –

14  January 29, 2014 through January 29, 2016.  If the approximately 19-month period of equitable

15  tolling during which Plaintiff alleges that he was pursuing his administrative remedies is run

16  <u>concurrently</u> with the two-year period of statutory tolling, then Plaintiff's complaint would be

17  time-barred.  However, if the approximately 19-month period of equitable tolling that Plaintiff

18  claims he is entitled to is run <u>consecutively</u> to the two-year period of statutory tolling, then

19  Plaintiff's complaint would be timely.  Nevertheless, whether periods of statutory tolling and

20  periods of equitable tolling are run concurrently, or consecutively, to each other is far from clear.

21       Neither the Ninth Circuit nor California have addressed the relationship between a period

22  of statutory tolling, such as the two-year tolling period under California Code of Civil Procedure

23  § 352.1, and a period of equitable tolling, such as the equitable tolling that occurs while a plaintiff

24  is completing the mandatory administrative exhaustion process, when the two tolling periods

25  occur simultaneously in total or in part.  Further, there is no published District Court authority

26  regarding this issue, and unpublished district court decisions are divided.

27       The district courts that have "permitted equitable tolling in addition to statutory tolling

28  when the tolling events overlap have relied upon language from <u>Lantzy [v. Centex Homes</u>, 31

Cal.4th 363, 370 (2003)]: '[e]quitable tolling under California law operates independently of the literal wording of the [California] Code of Civil Procedure to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness.'" Stevenson v. Holland, No. 1:16-cv-01831-AWI-SKO, 2017 WL 2958731, at *5 (E.D. Cal. July 11, 2017). "Those courts have read California law regarding equitable tolling to require tacking of additional time (beyond the statutory tolling period) to the end of a limitations period when an equitable tolling event occurs during a period of statutory tolling." Id.; see id. at *6 (stating that "[a]pplication of statutory and equitable tolling consecutively is more "consistent with Ninth Circuit authority on tolling pending exhaustion of administrative relief" and with "the mandate of California law to tack time to the end of the limitations period for equitable tolling"); Carranza v. Lewis, No. 15-cv-00682-YGR (PR), 2017 WL 1050538, at *18 (N.D. Cal. Mar. 17, 2017) ("Pursuant to Lantzy, no matter when it took place, the [equitably] tolled interval is 'tacked onto the end of the limitations period,' thus extending Plaintiff's deadline for suit by the entire length of time during he was pursuing his administrative filings."); Akhtar v. Mesa, No. 2:09-cv-2733 MCE AC P, 2014 WL 1922576, at *7 (E.D. Cal. May 14, 2014) (applying equitable tolling for the duration of the prison exhaustion process and statutory tolling to a prisoner's claim to extend the limitations period beyond four years).

On the other hand, "[t]he district courts that have declined to apply equitable tolling in addition to statutory tolling when the equitable tolling event overlaps with the period of statutory tolling have relied upon (1) the 'common sense' explanation that 'when two or more reasons for tolling exist' during the same period that those reasons 'will toll concurrently during the time they are both active, and are not tacked consecutively, one upon the other, [to extend the limitations period]' and (2) Rose v. Petaluma & S.R. Ry. Co. for the proposition that separate periods of disability cannot be tacked" onto each other. Stevenson, 2017 WL 2958731, at *6 (quoting Lopez v. Schwarzenegger, No. CIV S-09-1760 MCE GGH P, 2012 WL 78377, at *5); see Turner v. Cate, No. CV 15-109-JVS (AGR), 2016 WL 11517023, at *4 (C.D. Cal. July 22, 2016) (stating that, where the plaintiff claimed that he completed the mandatory exhaustion process "before the two-year tolling period under § 352.1 ended[,]" there was no "basis for additional tolling under

Brown" because "[t]he two-year statute of limitations … had not yet started to run" when the plaintiff exhausted administrative remedies); Oliver v. McDaniel, No. CV 14-0334-JVS (PJW), 2016 WL 4535389, at *3 (C.D. Cal. June 2, 2016) ("The general rule is that tolling is applied concurrently, not consecutively. Thus, when two tolling provisions apply to the same period of time, they overlap each other and are not tacked onto each other."); Gutierrez v. Butler, No. CIV S-06-2684 LKK EFB P, 2008 WL 436948, at * (E.D. Cal. Feb. 14, 2008) (holding that, when the time it took to exhaust administrative remedies "coexisted with the two-year statutory disability based on imprisonment[,]" the few months it took the plaintiff to exhaust "was subsumed" by the two-year statutory tolling period and thus, under Rose, the plaintiff could not extend the limitations period for the time to took to exhaust administrative remedies).

Neither side of the division is entirely persuasive. "While it is correct that California law does not permit … periods of disability to be strung together to extend the disability tolling period" under Rose (a succession of disabilities cannot be tacked upon the first disability so as to prevent the operation of the statute), "tolling for administrative exhaustion is not a species of disability tolling." Reece, 2013 WL 1339048, at *7. On the other hand, the Lantzy decision "does not support the contrary conclusion that California intends all tolling to be consecutive." Id. Lantzy's "language about tacking tolled intervals onto the end of the limitations period illustrates the effect of tolling on the calculation of dates." Id. "That illustration follows the description of the technical operations of tolling, which in general stops a clock that is otherwise running. Lantzy did not consider, and cannot govern, a situation in which a limitations period is *already tolled* when an event with independent power to toll occurs." Id. (italics in original). Thus, the cases which permitted tacking a tolling time to the end of a statutory limitations period did not consider whether the limitations period had already run.

After careful consideration, the Court finds that the rationale of the district courts that have declined to apply equitable tolling in addition to statutory tolling when the equitable tolling event overlaps with the period of statutory tolling are more persuasive. "At any given time following the accrual of a cause of action, the limitations period is either running or it is tolled, and only a running statute can be tolled. Under California law, § 352.1(a) prevents the statute of

limitations from running until two years after accrual of a prisoner's cause of action." Id. at \*8; Martin v. Biaggini, No. 12-cv-06289-JD, 2015 WL 1399240, at \*4 (N.D. Cal. Mar. 26, 2015). Therefore, when a prisoner completes the mandatory exhaustion process while California Code of Civil Procedure § 352.1(a) is preventing the statute of limitations from running, there is nothing to be tolled by the period of time that it took for the prisoner to exhaust administrative remedies. Reece, 2013 WL 1339048, at \*8; Martin, 2015 WL 1399240, at \*4; see also Turner, 2016 WL 11517023, at \*4. Consequently, the Court finds that, in a situation where a prisoner's exhaustion of prison remedies is completed during the two-year statutory tolling period established in California Code of Civil Procedure § 352.1(a), the statutory and equitable tolling periods will be applied to toll the applicable statute of limitations concurrently, not tacked consecutively in order to extend a prisoner's statute of limitations beyond four years. Lopez, 2012 WL 78377, at \*5.

Accordingly, in this case, California Code of Civil Procedure § 352.1(a) prevented the two-year statute of limitations applicable to Plaintiff's § 1983 claims from beginning to run until January 29, 2016, two years after Plaintiff's claims initially accrued on January 20, 2014. Further, as stated above, the period of equitable tolling that Plaintiff claims he is entitled to for completing the mandatory administrative exhaustion process – from January 29, 2014 through August 26, 2015 – is entirely subsumed within the two-year period of statutory tolling. Therefore, Plaintiff's periods of statutory tolling and equitable tolling toll the statute of limitations applicable to Plaintiff's § 1983 claims concurrently. Thus, Plaintiff is not entitled to have approximately 19 months of equitable tolling consecutively tacked onto the two years of statutory tolling and the two-year statute of limitations.

As a result, Plaintiff's statutory and equitable tolling periods tolled the two-year statute of limitations applicable to Plaintiff's claims until January 29, 2016, two years after Plaintiff's claims initially accrued on January 29, 2014. Thus, if Plaintiff is not entitled to any additional equitable tolling, then the statute of limitations applicable to Plaintiff's claims expired on January 29, 2018, approximately nine months before Plaintiff filed this action on October 26, 2018.

**b.      California's General Doctrine of Equitable Tolling**

"The general doctrine of equitable tolling suspends the running of a statute of limitations

when a plaintiff, possessing *several legal remedies*, reasonably and in good faith pursues one designed to lessen the extent of his injuries or damages." Dimcheff v. Bay Valley Pizza, Inc., 84 F. App'x 981, 983 (9th Cir. 2004). "Under California law, tolling is appropriate in a later suit when an earlier suit was filed and where the record shows: (1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to the defendant in gathering evidence to defendant against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim." Azer v. Connell, 306 F.3d 930, 936 (9th Cir. 2002) (citation and internal quotation marks omitted); see also Fink v. Shedler, 192 F.3d 911, 916 (9th Cir. 1999). A plaintiff is only entitled to equitable tolling if all three prongs of the test are satisfied. Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131, 1140 (9th Cir. 2001).

Here, Plaintiff contends that he is entitled to equitable tolling pursuant to California's general doctrine of equitable tolling for the period of time that Johnson I was pending. (ECF No. 23, at 3-4. However, Defendants argue that Plaintiff is not entitled to equitable tolling for the time period that Johnson I was pending under California's general doctrine of equitable tolling because the general doctrine does not apply where a plaintiff pursues successive claims in the same forum. (ECF No. 19-1, at 5-6.)

In this case, prior to filing the instant action, Plaintiff filed Johnson I in the U.S. District Court for the Eastern District of California on October 14, 2014, and litigated Johnson I in the District Court until the District Court granted the defendants' motion for summary judgment on Plaintiff's failure to exhaust his administrative remedies prior to filing suit and entered judgment against Plaintiff on March 1, 2017. (ECF No. 20, at 9, 16.) Then, Plaintiff appealed and litigated Johnson I before the Ninth Circuit Court of Appeals until September 18, 2018, when the Ninth Circuit affirmed the judgment against Plaintiff. (Id. at 7.) Therefore, if Plaintiff is entitled to equitable tolling from October 14, 2014 through September 18, 2018, then Plaintiff's complaint is timely.

However, California law provides that, while a statute of limitations in one forum may be equitably tolled while a plaintiff pursues a claim in another forum, the general doctrine of equitable tolling does not apply when a party pursues nearly identical claims in the *same* forum.

Schwarz v. Meinberg, 761 F. App'x 732, 735 (9th Cir. 2019) ("We have previously interpreted California law to hold that pendency of a claim in one forum does not toll the statute of limitation for a later claim in the same forum."); Martell v. Antelope Valley Hosp. Med. Ctr., 67 Cal. App. 4th 978, 985 (1998).

In this case, after reviewing the claims pursued by Plaintiff in Johnson I and comparing them to the claims pursued by Plaintiff in the instant action, the claims raised in Johnson I are nearly identical to the claims raised in this action. Both Johnson I and this action arise out of the same incident between Plaintiff and numerous defendants that occurred on January 29, 2014 at Pleasant Valley State Prison, most of the defendants in Johnson I are also defendants named in this action, and Plaintiff pursued nearly the exact same claims in Johnson I as he is pursuing in this action. Therefore, since Johnson I was litigated in the same federal form as this action, the Court finds that plaintiff is not entitled to any tolling pursuant to California's general doctrine of equitable tolling for the length of time that Johnson I was pending before the U.S. District Court for the Eastern District of California and the Ninth Circuit Court of Appeals.[1]

Consequently, if Plaintiff is not entitled to any other type of equitable tolling, then the statute of limitations applicable to Plaintiff's claims expired on January 29, 2018, approximately nine months before Plaintiff filed this action on October 26, 2018.

**c.      Equitable Tolling Pursuant to Bollinger v. Nat'l Fire Ins. Co.**

Next, the Court must consider whether Plaintiff is entitled to equitable tolling pursuant to Bollinger v. Nat'l Fire Ins. Co., 25 Cal. 2d 399 (1944). Unlike the general doctrine of equitable tolling, Bollinger applies when a plaintiff refiles the same or virtually identical claims in the same forum and "seeks equitable relief from the statute of limitations." Dimcheff, 84 F. App'x at 983. "[T]hree elements [must] be present before the Bollinger rule of equitable tolling will apply: (1) the plaintiff must have diligently pursued his or her claim; (2) the fact that the plaintiff is left without a judicial forum for resolution of the claim must be attributable to forces outside the

---

[1] There is no authority for Plaintiff's argument that the time during Plaintiff's appeal to the Ninth Circuit was tolled. (ECF No. 23 at 31-32.) The appeal was filed from an earlier action in the same forum in which the same claims were being pursued. See Schwarz v. Meinberg, 761 F. App'x 732, 735.

control of the plaintiff; and (3) the defendant must not be prejudiced by application of the doctrine (which is normally not a factor since the defendant will have had notice of the first action)."  Hull v. Central Pathology Service Med. Clinic, 28 Cal. App. 4th 1328, 1336 (1994).

As discussed above, the claims raised in Johnson I and the claims raised in this action are virtually identical and that both this action and Johnson I were filed in the same federal forum. However, in Johnson I, the District Court granted summary judgment against Plaintiff and dismissed the action, and the Ninth Circuit affirmed, because Plaintiff failed to exhaust the administrative remedies applicable to his claims before he filed Johnson I and did not raise a genuine dispute of material fact as to whether there was something that made the generally available administrative remedies effectively unavailable to him.  (ECF No. 23, at 27-28.) Therefore, Plaintiff cannot satisfy the second element of the Bollinger rule because "the fact that the plaintiff is left without a judicial forum for resolution of the" claims raised in the current action is not "attributable to forces outside the control of the plaintiff[.]"  Hull, 28 Cal. App. 4th at 1336.  Consequently, the Court finds that Plaintiff is not entitled to any equitable tolling pursuant to the Bollinger rule.

In sum, Plaintiff is not entitled to any equitable tolling.  Thus, the only tolling that Plaintiff is entitled to is the two years of statutory tolling pursuant to California Code of Civil Procedure § 352.1(a).  However, even with the two years of statutory tolling, the two-year statute of limitations applicable to Plaintiff's § 1983 claims expired on January 29, 2018, four years after Plaintiff's claims accrued on January 29, 2014.  Accordingly, since Plaintiff did not file this action until October 26, 2018, Plaintiff's § 1983 claims are time-barred.

### D.  Law of the Case

Finally, Plaintiff contends that it is law of the case that this action is timely filed because the Ninth Circuit stated in the Johnson I memorandum opinion that: "We treat the judgment as a dismissal without prejudice to Johnson refiling the action."  (ECF No. 23, at 28.)

Under the law of the case doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." Thomas v. Bible, 983 F.2d 152, 154 (9th Cir. 1993).  However, "[f]or the doctrine to apply, the

1  issue in question must have been decided either expressly or by necessary implication in the

2  previous disposition." Id.

3         First, the law of the case doctrine is inapplicable here because the Ninth Circuit issued its

4  memorandum opinion in Plaintiff's previous action, not this action.  Second, even if the law of

5  the case doctrine was applicable here, the Ninth Circuit did not expressly, or implicitly, decide

6  that any future action that Plaintiff filed raising the claims that he first raised in Johnson I would

7  not be barred by the applicable statute of limitations.  Instead, the Ninth Circuit's statement that

8  the judgment in Johnson I was to be treated as a dismissal without prejudice to Johnson refiling

9  the action was a statement that, since Johnson I was not decided on the merits of Johnson's

10  claims, but was decided on a procedural issue – whether Plaintiff had exhausted his

11  administrative remedies prior to suit, the judgment in Johnson I did not bar or preclude Plaintiff

12  from filing a new action raising the same claims so long as the refiled lawsuit was filed within the

13  applicable statute of limitations.  Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 505-

14  06 (2001) (stating that a "dismissal without prejudice" is defined as "a dismissal that does not bar

15  the plaintiff from refiling the lawsuit *within the applicable limitations period*" (italics added and

16  citation and internal brackets omitted)).

17         Therefore, the Ninth Circuit's statement in the Johnson I memorandum opinion is not law

18  of the case establishing that this action was filed within the statute of limitations applicable to

19  Johnson's § 1983 claims.  As discussed above, since this action was not filed within the

20  applicable statute of limitations, this action is time-barred.

21         **E.      Leave to Amend Would Be Futile**

22         The only remaining issue is whether to allow Plaintiff leave to amend.  "Under Federal

23  Rule of Civil Procedure 15(a), leave to amend shall be freely given when justice so requires.

24  However, the district court may exercise its discretion to deny leave to amend due to undue delay,

25  bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by

26  amendments previously allowed, undue prejudice to the opposing party …, and futility of

27  amendment."  Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 892 (9th Cir. 2010) (citations

28  and internal quotation marks and brackets omitted); see also Lopez v. Smith, 203 F.3d 1122, 1127

(9th Cir. 2000) ("[I]n dismissing for failure to state a claim under Rule 12(b)(6), a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." (citation and internal quotation marks omitted)).

In this case, the Court has determined that Plaintiff's claims are barred by the applicable statute of limitations. Since Plaintiff cannot plead any additional facts to cure these defects, it would be futile to grant Plaintiff leave to amend his complaint. See Platt Elec. Supply, Inc. v. EOFF Elec., Inc., 522 F.3d 1049, 1060 (9th Cir. 2008).

## IV.    Conclusion and Recommendations

Based on the foregoing, Plaintiff's complaint fails to state a cognizable claim for relief because all of Plaintiff's claims are barred by the applicable statute of limitations. Since the defects in his pleading are not capable of being cured through amendment, granting leave to amend would be futile. Akhtar v. Mesa, 698 F.3d 1202, 1213 (9th Cir. 2012).

Accordingly, it is HEREBY RECOMMENDED that:

1.    Defendant Bejinez's, Benavides's, Deshazo's, Espinoza's, Hill's, Hoggard's, Kennedy's, Leon's, Lopez's, Luna's, Newton's, Salas's, Santos's, and Trinidad's filed a motion to dismiss, (ECF No. 19), be GRANTED WITHOUT LEAVE TO AMEND; and

2.    This action be dismissed, with prejudice, for failure to state a claim upon which relief may be granted.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these findings and recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate

///

///

///

///

24

Judge's Findings and Recommendation."  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  __March 27, 2020__          ___/s/ Barbara A. McAuliffe___
                                       UNITED STATES MAGISTRATE JUDGE