1
2
3
4
5
6
7           **UNITED STATES DISTRICT COURT**
8           **EASTERN DISTRICT OF CALIFORNIA**
9
10

| | |
|---|---|
| LACEDRIC WILLIAM JOHNSON, | ) Case No.: 1:18-cv-01477-AWI-BAM (PC) |
| Plaintiff, | ) FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS |
| v. | ) |
| SCOTT FRAUENHEIM, et al., | ) (ECF Nos. 47) |
| Defendants. | ) **FOURTEEN (14) DAY DEADLINE** |

Plaintiff LaCedric William Johnson ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  The Court thoroughly set forth the relevant procedural background in the Court's Findings and Recommendations Granting in Part and Denying in Part Plaintiff's Motion to Amend and Dismissing Certain Defendants.  (ECF No. 45.) These Findings and Recommendations were adopted in full by the District Judge n September 27, 2021.  (ECF No. 46.)  The claims against Defendants M. Ramirez and D. Erickson under 42 U.S.C. § 1983 were dismissed, and Plaintiff was granted leave to amend, except as to Defendants M. Ramirez and D. Erickson. Plaintiff's first amended complaint, filed on September 27, 2021, is currently before the Court for screening.  (ECF No. 47.)

///

1

## I.      Screening Requirement and Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights.  *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor.  *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012).  To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678–79; *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009).  The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard.  *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.

## II.      Summary of Plaintiff's Allegations

Plaintiff is currently housed at San Quentin State Prison.  Plaintiff alleges that the events at issue took place at Pleasant Valley State Prison ("PVSP").  Plaintiff names the following defendants: (1) Correctional Sergeant J. Benavides; (2) Correctional Officer J. Bejinez; (3) Correctional Officer S. Deshazo; (4) Correctional Officer D. Erickson; (5) Correctional Officer S. Espinoza; (6) Correctional Officer J. Hill; (7) Registered Nurse Ryan Hoggard; (8) Correctional Officer C. Kennedy; (9)

2

Correctional Officer W. Leon; (10) Correctional Officer S. Lopez; (11) Correctional Officer G. Luna; (12) Correctional Officer A. Salas; (13) Correctional Officer M. Santos; (14) Correctional Officer E. Trinidad; (15) Correctional Officer R. Newton; and (16) M. Ramirez, Correctional Officer.[1]

Plaintiff's first amended complaint (ECF No. 47) alleges as follows.

Custody staff at PVSP have a longstanding practice of using pat-down and unclothed body searches to initiate assaults against targeted inmates as a means of intimidation, harassment, and retaliation resulting in false 115 Rules Violation Reports alleging "battery of peace officer" and disciplinary sanctions, i.e., administrative segregation placement, Security Housing Unit term, increased classification score, forfeiture of good-time/worktime credits, possible transfer and referral to the District Attorney for prosecution. At the time of this incident, Plaintiff fit the criteria of a "targeted inmate" because he was actively pursuing a conversion action in the Superior Court of California, County of Fresno against two PVSP prison guards who intentionally discarded legal files to five active cases, religious property, and personal property.

On January 29, 2014, at 0930 hours, Facility Bravo (Facility B) yard Defendant Benavides was conducting a controlled yard release with random pat-down searches being conducted by approximately ten correctional officers. During the Building 1 yard release, Plaintiff forgot his identification card in his cell. Since inmates must carry their identification card on their person, Plaintiff summoned Defendant Newton, the Building 1 Control Tower Officer, for an unlock, explaining that he had forgotten his identification card in his cell and requesting an unlock to gain access. Defendant Newton denied Plaintiff's request.

Defendant Santos, the Building 1 First Tier Floor Officer, ordered Plaintiff to "strip-out" in the lower B section shower. Plaintiff took off all of his clothes except for his boxers, gave them to Defendant Santos and Defendant Leon, the Second Tier Officer, along with his legal folder, and stood waiting until the search of his clothing and legal folder was completed. Defendant Santos approached

---

[1] As stated above, the claims against Defendants D. Erickson (defendant (4)) and M. Ramirez (Defendant (16)) under 42 U.S.C. § 1983 were dismissed without leave to amend. (ECF No. 46.) While the first amended complaint names both Defendants M. Ramirez and D. Erickson, the claims cannot go forward. The Court will not include any summary of allegations against Defendants D. Erickson and M. Ramirez in this screening order.

the shower and told Plaintiff, "Give me your boxers," just as Defendant Luna and Defendant Espinoza, a female officer, entered the building and looked towards the shower and the ongoing search.  (ECF No. 47, at 6.)  Plaintiff stated, "One moment out of respect for the women, I'm Muslim."  (*Id*.)  Defendant Santos then opened the shower gate and barked "Cuff Up! Cuff Up! Get Down!"  (*Id.)*  When Plaintiff asked what he had done, Defendant Santos emptied a canister of O.C. pepper spray directly in Plaintiff's face, blinding him.  Protocol procedures after use of pepper spray is to decontaminate inmates immediately.

Plaintiff stumbled blindly to the back of the shower, turned the water on, and rinsed his eyes, with his back to Defendant Santos.  Defendant Santos then entered the shower and began striking Plaintiff across the knee of his left leg with rapid, hard successive blows with his MEB expandable baton, which caused Plaintiff's surgically repaired knee to weaken, become painful, and a wound on the knee to open up and bleed.  When Plaintiff turned around, Defendant Santos left the shower.

At that point, Defendant Leon emptied a canister of O.C. pepper spray into Plaintiff's face, blinding Plaintiff and causing Plaintiff to inhale mace through his nose, choking Plaintiff, as Defendant Leon yelled for Plaintiff to "Get the fuck down!"  (*Id.* At 7.)  Plaintiff turned, placed his head under the water to rinse his eyes, due to the burning and blindness, and attempted to comply with the order to prone out on the shower, but pain from the injured knee and leg made compliance difficult.  Defendant Santos entered the shower for a second time and began beating Plaintiff across the arm, wrist, elbow, and body with his MEB baton.  When Plaintiff stood up and raised his arms to protect himself from blows to his head, Defendant Santos ran out of the shower again.

As Plaintiff was being beaten by Defendant Santos, Defendant Espinoza made a call over her radio of a disturbance in Building 1.  All inmates were ordered down.  Defendant Benavides and approximately 10 other officers who were outside of the building entered the building, waving batons and shaking up their canisters of O.C. pepper spray.  The officers formed a skirmish line in front of the shower, yelling "Get the fuck down!"  (*Id.* at 7.)  Plaintiff's new allegations state that these guards include J. Bejines, J. Hill, C. Kennedy, S. Lopez, A. Salas, E. Trinidad, M. Santos, W. Leon, S. Espinoza and C. Luna, R. Newton in the building tower armed with the block gun or mini 14 rifle.  The guards could have locked the shower and let Plaintiff decontaminate.  They failed to do so.

S. Espinoza, G. Luna, W. Leon and R. Newton witnessed M. Santos beating Plaintiff in an unprovided attack and failed to intervene.

As the 10 officers stood in a skirmish line in front of the shower, Defendant Santos then sprayed Plaintiff in the face with another canister of O.C. pepper spray. Plaintiff added allegations that J. Benavides, J. Bejinez, S. Espinoza, J. Hill, C. Kennedy, W. Leon, S. Lopez, G. Luna, A. Salas and E. Trinidad all emptied their cannisters of pepper spray on Plaintiff causing him to choke gage, hyperventilate and blinding and burning him.   Further, as they yelled "Get down!"  (*Id.* at 8.)  As Plaintiff attempted to prone out in a pool of pepper spray, Defendant Santos entered the shower for a third time and began beating Plaintiff across the arms and legs with his MEB baton.  Defendant Santos then grabbed Plaintiff by the ankle and dragged Plaintiff out of the shower and onto the dayroom floor.

J. Benavides, J. Bejinez, S. Espinoza, J. Hill, C. Kennedy, W. Leon, S. Lopez, G. Luna, A. Salas and E. Trinidad had a duty to intervene in the assault of Plaintiff who was defenseless, unclothed, blindding choking gagging.  (*Id.* at 8.)

Defendant Hill and Defendant Salas then jumped on Plaintiff's back, causing pain, and both began punching Plaintiff in the face and head.  Plaintiff's head bounced off of the concrete floor approximately three times.  Out of fear, Plaintiff attempted to protect his left wrist, which was swollen, throbbing, and disfigured, by placing it under his torso.  Defendant Benavides grabbed his right hand and wrist and held it, preventing Plaintiff from protecting himself from punched by J. Hill and A. Salas.   Defendants Benavides, Luna, Lopez, and Salas were punching and pulling on Plaintiff's wrist, while yelling, "Stop resisting!"  (<u>Id.</u> at 9.)  One of the guards kicked Plaintiff in the genitalia.

Plaintiff began twisting his hips, making his genitalia a moving target, to avoid further contact. J. Bejinez, C. Kennedy, S. Lopez, and M Santos kicked Plaintiff in the legs and groin area.

Other officers began kicking and stomping Plaintiff's legs and torso until Plaintiff became weak.  Defendant Kennedy continued kicking Plaintiff.  Defendant Hill stated: "He's screaming like a bitch."  (*Id.*)  Plaintiff's wrists were then cuffed behind his back, extremely tight.  Defendant J. Benavides grabbed Plaintiff's ankles and dismissed Defendant Ramirez placed flex cuffs on Plaintiff's ankles, tightly, which dug into Plaintiff's flesh, causing bleeding and pain.

Medical staff were summoned.  Defendants R. Hoggard brought a gurney.  Defendants Benavides, and Santos, lifted Plaintiff, placed Plaintiff in a stokes litter, and then placed him on the gurney.  Defendant Salas ripped off Plaintiff's boxer shorts off and placed the pepper-spray soaked underwear over Plaintiff's head, burning Plaintiff's face.  Plaintiff was naked in the presence of females Defendants Hansen, Liebold, Sharp, and Espinoza, and Jane doe counselor[2] all women.  Nothing was placed over Plaintiff to cover his genitalia.

Defendants Bejinez and Trinidad then wheeled Plaintiff, naked, on the gurney across the yard in the presence of the inmate population, custody staff of both genders, and support services staff.  (Id. at 10.)  Plaintiff was taken to the Facility B medical clinic, where he arrived at approximately 0945 hours.  Defendant Deshazo was the assigned medical triage coverage officer. Defendants Bejinez and Trinidad lifted Plaintiff off of the gurney in the stokes litter and slammed Plaintiff to the ground in the holding tank.  The already tight handcuffs that were under Plaintiff's body clicked even tighter, which caused the handcuffs to dig deeper into Plaintiff's injured wrist, flesh, and bone, causing excruciating pain.

Plaintiff begged Defendant Deshazo to loosen, or remove, the cuffs and to summon medical staff for treatment.  However, Defendant Deshazo stated "No.  And shut up!" while Plaintiff was screaming in pain, hyperventilating, coughing, and sweating.  Defendant Deshazo placed a spit mask hood over Plaintiff's head. Plaintiff was choking, gagging for air, hyperventilating, sweating, causing pain, anguish and anxiety.  Deshazo left Plaintiff hog tied with the spit hood over his head for about an hour.

Defendant Deshazo is not authorized to put the spit hood on Plaintiff while suffering from pepper spray, according to Department Operations Manual ("DOM") 51020.16. Plaintiff's lungs are damaged by Valley Fever spores. Plaintiff was showing apparent signs of respiratory distress and weakness from the beating.  Plaintiff was choking, gagging for air, hyperventilating, sweating, phlegm and mucus was sticking to the spit hood mask, which clogged up the mask and caused Plaintiff to suffocate and fight for air.  Plaintiff was in and out of consciousness.  Defendant Deshazo disregarded

---

[2] Plaintiff has not alleged any Jane Does as defendants.

Plaintiff's pleas for help while the hand and flex ankle cuffs were cutting into Plaintiff's flesh, the spit hood was restricting the oxygen to Plaintiff's lungs and brain, Plaintiff was burning all over from excessive pepper spray, Plaintiff's head was throbbing, and Plaintiff was bleeding and swelling. Defendant Deshazo just ignored Plaintiff, even though he was within 10 feet of Plaintiff.  Defendant Deshazo opened the door and let another inmate in, Homick, who witnessed Plaintiff, naked and suffering on the floor.

Yard recall was ordered to lock up for a yard recall over the PA system.  Another inmate, Terry McGhee, who witnessed Plaintiff being wheeled across the yard naked, also witnessed the responding officers exit Building 1 high-fiving and fist bumping after the beating.

At approximately 1045 hours, Defendants Bejinez and Trinidad had a conversation with Defendant Benavides at the Facility B medical entrance.  Then, Defendants Bejinez and Trinidad grabbed a gurney, placed Plaintiff on the gurney, and wheeled him, still naked, across the yard to the gym and they took off the spit mask.

Defendants Bejinez and Trinidad removed the spit mask.  After one of the Defendants stated that the showers were not working, they left Plaintiff lying in the stokes litter on the gurney suffering and sat down and held a conversation among themselves.  Defendant Benavides entered the gym told Defendants Bejinez and Trinidad to remove Plaintiff's cuffs, take Plaintiff out of the stokes litter, and place Plaintiff on the bench.  Plaintiff could not hold himself up and was slumped over because he was weak and could not support himself with his injured arm, wrist, knees, or leg, so he slumped over. Defendants Bejinez and Trinidad then just sat back down and resumed their personal conversation.

At that point, Gomez, who is not a defendant, entered the gym, assessed the situation, filled a bucket with water from a sink, and poured it over Plaintiff's head.  After Gomez poured a second bucket of water over Plaintiff, Plaintiff requested that Gomez pour a third bucket of water over him because his penis was burning.  Plaintiff informed Gomez that the burning was unbearable.  However, Gomez stated that: "You'll be better off without water, water agitates the chemical."  Plaintiff's eyes were never rinsed.  He peeked only.

Defendant Hoggard then entered the gym, stopped approximately ten feet away from Plaintiff, wrote something down on a piece of paper, and exited the gym.  Plaintiff assumed that Defendant

Hoggard was going to return to provide medical care, but Defendant Hoggard did not. Plaintiff alleges Hoggard had a duty to assess Johnson and document his injuries and refer  him to a physician. *Para 40.*  Instead, as soon as Defendant Hoggard exited the gym. Defendant Benavides entered the gym, told Defendants Bejinez and Trinidad to prepare Plaintiff for transport to Delta-4 ad-seg (administrative segregation) unit, and gave Plaintiff a pair of boxer shorts.  Plaintiff was unable to put the boxer shorts on without assistance and Benavides told them to get a wheelchair.

Defendant Hoggard's CDCR 7219 Injury/Assessment Medical Report of Injuries only indicated that Plaintiff had a scratch/abrasion on his left knee and O.C. pepper spray on his torso.  The report diminished actual injuries.

The captain or designed staff had a duty to conduct an excessive force video deposition investigation based on facts known to Benavides.  Plaintiff asserts that this orchestrated plan of action between Defendants Benavides and Hoggard to minimize Plaintiff's documented injuries was done in order to isolate Plaintiff in ad-seg and to prevent Plaintiff from getting medical care, which would have opened up a serious investigation into excessive force and the completion of an excess force video deposition as required by prison regulations.  Pursuant to the Department Operations Manual 51020.18.2, a video deposition should have been taken.

At approximately 1200 hours, Defendants Bejinez and Trinidad had to carry Plaintiff into the Delta 4 segregation unit by putting their shoulders under his arms in order to drag Plaintiff.  (*Id.* at p. 13.)

Plaintiff was found unresponsive in Cell #127 at 1600 hours by a Delta 4-unit officer.  Three officers entered the cell, and placed him on medical gurney manned by D. Hall, LVN. Delta 4-unit medical staff, Licensed Vocational Nurse D. Hall was summoned.  After Nurse Hall ascertained that Plaintiff's injuries were severe and his vitals were high, Nurse Hall made arrangements for Plaintiff to be taken to PVSP Correctional Treatment Center ("CTC").  Plaintiff's visible signs of injury were assessed and documents by Registered Nurse K. Bradley on a CDCR 7219 Injury/Assessment Report. Plaintiff was evaluated by Dr. Ola, given an epidural shot for pain management, and then sent to Community Regional Medical Center in Fresno.  Plaintiff was admitted to the hospital, monitored

overnight the night, and then released on January 30, 2014.  Plaintiff believes he got an MRI and a cat scan for injuries.  His eyes continued to burn and drained until January 31, 2014.

On January 30, 2014, Plaintiff was housed at PVSP CTC for medical evaluation and monitoring.  The physical signs of trauma to Plaintiff's head and body were more prominent.  Plaintiff's eyes were black and blue, hemorrhaged orbital of both eyes, his left wrist was deformed and swollen, he had a loss of feeling in his left hand, he had a numb and tingling sensation in his left extremities, a bruised left bicep and rib, his left knee was swollen with two lacerations, his left shin was swollen, he had a right inside ankle gash, an intense headache and pain all over his body, and his eyes and body were burning from pepper spray.

On January 31, 2014, at 1000 hours, Plaintiff was allowed to take a shower.  After about 20 minutes, the effects of the pepper spray fully wore off.

On February 3, 2014, at 1000 hours, a doctor inquired about Plaintiff's pain level based on Plaintiff's apparent head and eye injuries.  Plaintiff told the doctor that he felt dizzy, severe headache, and blurred vision.  The doctor prescribed Plaintiff ibuprofen, acetaminophen, and made Plaintiff a specialty clinic appointment to see optometry.

On February 18, 2014, Plaintiff was seen by the mental health department by Dr. Kuo and prescribed Citalopram for severe depression and anxiety and weekly therapy sessions due to the trauma Plaintiff suffered.  Also, on February 18, 2014,[3] Plaintiff was taken to the specialty clinic for an optometry examination.  It was ascertained that Plaintiff suffered eye damage from the assault and a bi-focal was added to his prescription.  Plaintiff also suffered a stigmatism.

On March 11, 2014, Sergeant Clark, along with Correctional Officer Ruggles, conducted an excessive force video deposition in Delta 4 unit at 1925 hours, and ran out of video tape.  On March 18, 2014, Sergeant Clark and Correctional Officer Ruggles conducted a second excessive force video deposition. This was in violation of DOM 51-20.18.2.

---

[3] Plaintiff's complaint states the optometry examination occurred on January 18, 2014.  (Doc.47, ¶55.)  The Court assumed this January dates is an error, as the incident at issued occurred on January 29, 2014, and Plaintiff meant the optometry examination occurred on **February** 18, 2014.

On April 23, 2014, Plaintiff was prescribed Lisinopril for stress related high blood pressure, hypertension from the brutal assault.

On September 18, 2014, medical staff issued Plaintiff a second pair of eye-wear to conclude the correction of the damage to his eyes caused by the January 29, 2014 assault.

In September 2015, Plaintiff needed an operation to remove a lipoma tumor lesion in his right lateral flank, where Defendant Kennedy and other officers kicked Plaintiff in the rib area with military style boots.

On September 22, 2015, Plaintiff suffered temporary blindness in his right eye.  He was diagnosed with ocular migraines as a result of defendants beating Plaintiff in the head. His right eye goes blind for 5 – 15 minutes as result of the head injury by Hill and Salas.

Plaintiff alleges he has exhausted his government claims of deliberate indifference claims and excessive forces claims.

Plaintiff asserts that "Defendants" are being sued in their individual capacity and their official capacity.

In claim 1, Plaintiff alleges violation of the First Amendment Religion clause for his Islamic believe in one's modesty and for violation of Title 15, Art. 2, §3287(b)-Body Inspections.  In claim 2, Plaintiff alleges violation of The Fourth Amendment right against unreasonable search and seizure for abusive search and sexual assault, when Defendant Salas snatched Plaintiff's boxer shorts off his body, strangling Plaintiff's genitalia and ripping into his anus. In claim 3, Plaintiff alleges violation of Eighth Amendment for excessive force, tight cuffs, abusive search and pepper spray.  In claim 4, Plaintiff alleges violation of the Eighth Amendment for denial, delay of medical care against Benavides, J. Bejinez, Deshazo Trinidad, Hoggard. (ECF No. 47. at 24.)

Plaintiff seeks $5,000,000.00 in compensatory damages for each defendant in each cause of action, $5,000,000.00 in punitive damages for each cause of action, declaratory relief, costs of suit, and/or attorney's fees.

///

///

///

10

### III.   **Discussion**

#### A.   **Official Capacity**

Plaintiff asserts that he is suing each of the named Defendants in both their individual and official capacities.  Plaintiff seeks monetary damages and declaratory relief against each of the named Defendants.

"Suits against state officials in their official capacity … should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1111 (9th Cir. 2010) (treating prisoner's suit against state officials in their official capacities as a suit against the state of California).  An official capacity suit "represent[s] only another way of pleading an action against an entity of which an officer is an agent."  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citation omitted).  Such a suit "is not a suit against the official personally, for the real party in interest is the entity." *Id.* at 166.

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities."  *Aholelei v. Dep't of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007).  Therefore, Plaintiff's claim for monetary damages against all of the named Defendants in their official capacity is barred by the Eleventh Amendment.

Further, while the Eleventh Amendment does not bar claims for prospective injunctive relief against a state official who is sued in their official capacity, Plaintiff does not seek any prospective injunctive relief against any named Defendant in his complaint.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 92 (1989).  Additionally, even if Plaintiff were seeking prospective injunctive relief, Plaintiff's injunctive relief claim would be moot because Plaintiff has been transferred from PVSP and he has not demonstrated that there is a reasonable expectation that he will be transferred back to PVSP.  *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (*per curiam*); *see also Andrews v. Cervantes*, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007).

Accordingly, Plaintiff has failed to state a cognizable official capacity claim against any named Defendant.

///

///

**B.     Excessive Force**

Plaintiff asserts that certain Defendants violated his Eighth Amendment right against cruel and unusual punishment by using excessive force on him.

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v McMillian*, 503 U.S. 1, 5 (1992) (citations omitted). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (quotations omitted).

For claims of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7.  Relevant factors for this consideration include "the extent of injury... [,] the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. 1078, 1085 (1986)).  The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency, *Hudson*, 503 U.S. at 8 (quotation marks and citation omitted), and although *de minimis* uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident, *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (citing *Hudson*, 503 U.S. at 9-10) (quotation marks omitted); *Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002).

1.     Defendants Santos and Leon

Plaintiff alleges that, after Defendant Santos ordered Plaintiff to remove his boxer shorts and Plaintiff asked to wait for a moment due to the presence of at least one female, Defendant Santos told Plaintiff to "get down" and when Plaintiff asked what he had done, Defendant Santos sprayed Plaintiff directly in the face with a canister of pepper spray.  When Plaintiff went to the back of the shower to rinse his eyes with his back to Defendant Santos, Defendant Santos entered the shower and beat

Plaintiff across his left leg with his MEB expandable baton.  After Plaintiff turned around and faced Defendant Santos, Defendant Santos left the shower and Defendant Leon sprayed Plaintiff in the face with a canister of pepper spray while yelling for Plaintiff to get down.  When Plaintiff attempted to comply with the order to prone out on the ground, Defendant Santos re-entered the shower and hit Plaintiff across the arm, wrist, elbow, and body with his baton.  After other officers arrived at the scene of the incident, Defendant Santos sprayed another canister of pepper spray in Plaintiff's face.  As Plaintiff once again attempted to prone out, Defendant Santos entered the shower for a third time, hit Plaintiff's arms and legs with his baton, and grabbed Plaintiff by the ankle and dragged Plaintiff out of the shower and onto the dayroom floor.

These allegations are sufficient to state a cognizable claim for excessive force against Defendants Santos and Leon.

2. <u>Defendants Benavides, Bejinez, Espinoza, Hill, Kennedy, Lopez, Luna, Salas, and Trinidad</u>

Plaintiff alleges that, after Defendant Espinoza made a call over her radio about a disturbance in Building 1, Defendant Benavides and approximately ten responding officers, including Defendants Bejinez, J. Bejinez, Espinoza, Hill, Kennedy, Leon, Lopez, Luna, Salas, and Trinidad, entered the building waving batons and shaking up canisters of pepper spray.  The Defendants formed a skirmish line in front of the shower. After Defendant Santos sprayed Plaintiff in the face with pepper spray, Plaintiff alleges that J. Benevides, J. Bejinez, S. Espinoza, J. Hill, C. Kennedy, W. Leon, S. Lopez, G. Luna, A. Salas and E. Trinidad all emptied their cannisters of pepper spray on Plaintiff as they yelled for Plaintiff to get down.

These allegations are sufficient to state a cognizable claim for excessive force against Defendants J. Benevides, J. Bejinez, S. Espinoza, J. Hill, C. Kennedy, W. Leon, S. Lopez, G. Luna, A. Salas and E. Trinidad.  Plaintiff fails to state a cognizable claim against R. Newton, the tower guard, because Plaintiff does not allege he engaged in any use of force.

Further, after Defendant Santos dragged Plaintiff out of the shower, Plaintiff asserts that Defendants Hill and Salas jumped on Plaintiff's back and began punching Plaintiff in the face and head.  Defendants Benavides and Luna held Plaintiff's arm as Defendants Hill and Salas punched

Plaintiff in the head and face.  Further, Defendants Benavides, Luna, Lopez, and Salas were punching and pulling on Plaintiff's wrist while yelling for Plaintiff to stop resisting.   J. Bejinez, C. Kennedy, S. Lopez, and M Santos kicked Plaintiff in the legs and groin area. Defendant Kennedy continued kicking Plaintiff.

These allegations are sufficient to state a cognizable claim for excessive force against Defendants Benavides, Hill, Salas, Luna, Lopez, Kennedy, Santos and Bejinez.

3.   Defendant Deshazo

Plaintiff alleges that, when he arrived at the Facility B medical clinic, Defendants Bejinez and Trinidad lifted him off the gurney in the stokes litter and slammed him to the ground in the holding tank.  This action caused the already too tight handcuffs under Plaintiff's body to click tighter and dig deeper into Plaintiff's injured wrist, causing excruciating pain.  Plaintiff alleges that he begged Defendant Deshazo, the assigned medical triage coverage officer, to loosen up or remove the cuffs, but Defendant Deshazo refused.

However, as in his original complaint, Plaintiff has not alleged that he asked Defendant Deshazo more than once to loosen the handcuffs or that Defendant Deshazo otherwise knew that the handcuffs were too tight and were causing Plaintiff to suffer severe pain.  *See Guerrero v. Rivera*, No. EDCV 13-0092-JGB (JPR), 2013 WL 878285, at *2 (C.D. Cal. Mar. 8, 2013) (finding that plaintiff had failed to state a cognizable excessive force claim regarding overly tight handcuffs were the named defendants had nothing to do with the handcuffing, that Plaintiff did not allege that he made more than one request to any defendant to loosen the cuffs, or that any defendant was present for more than a few moments and was able to observe the effect the handcuffs had on the plaintiff); *Gregory v. Adams*, No. CIV S-05-1393 FCD EFB P, 2008 WL 486013, at *5 (E.D. Cal. Feb. 19, 2008) (holding that triable issue existed as to whether officer who did not personally handcuff plaintiff nonetheless used excessive force in ignoring plaintiff's repeated assertions of pain and refusing to loosen cuffs for more than five hours).  Therefore, Plaintiff has not alleged a cognizable claim for excessive force based on refusing to loosen overly tight handcuffs against Defendant Deshazo.

///

///

4.      Failure to Intervene in Excessive Force

A prison official may be liable under § 1983 if he is aware that a fellow official is violating a prisoner's constitutional rights, but fails to intervene.  *See Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) ("[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen.") (citation omitted); *see also Gaudreault v. Municipality of Salem*, 923 F.2d 203, 207 n. 3 (1st Cir. 1990) ("An officer who is present at the scene who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance.").  A failure to intervene can support an excessive force claim where the bystander-officers had a realistic opportunity to intervene, but failed to do so.  *Lolli v. County of Orange*, 351 F.3d 410, 418 (9th Cir. 2003); *Cunningham*, 229 F.3d at 1289.

Plaintiff asserts that Defendants Espinoza, Luna, W. Leon, and Newton witnessed Defendant Santos' unprovoked attack on Plaintiff, but failed to intervene.  (ECF No. 47, at 7.)  Liberally construing Plaintiff's allegations, Plaintiff states a cognizable claim for failure to intervene against Defendants Espinoza, Luna, Leon, and Newton.

Plaintiff asserts that Defendants Benavides, Bejinez, Espinoza, Hill, Kennedy, Leon, Lopez, Luna, Salas, and Trinidad all had a duty to intervene in Defendant Santos' assault of Plaintiff.  (ECF No. 47, at 8.)  However, as in the original complaint, Plaintiff has failed to allege facts demonstrating that each of those Defendants was present when Defendant Santos utilized force on Plaintiff, that each of those Defendants could see that Defendant Santos was using excessive force on Plaintiff, and that each of those Defendants had a realistic opportunity to intervene during Defendant Santos' assault of Plaintiff.  Plaintiff alleges that some or all of these Defendants were engaging in acts excessive force at that time, and therefore were not failing to intervene.

Therefore, Plaintiff has failed to allege a cognizable claim for failure to intervene in excessive force against Defendants Benavides, Bejinez, Hill, Kennedy, Leon, Lopez, Salas, and Trinidad.

**C.      Unreasonable Search**

The Fourth Amendment prohibits only unreasonable searches.  *Bell v. Wolfish*, 441 U.S. 520, 558 (1979); *Byrd v. Maricopa Cnty. Sheriff's Office*, 629 F.3d 1135, 1140 (9th Cir. 2011);

*Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988).  The reasonableness of the search is determined by the context, which "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails."  *Bell*, 441 U.S. at 559.  Factors that must be evaluated are "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."  *Id.*; *Bull v. City and Cnty. of San Francisco*, 595 F.3d 964, 972 (9th Cir. 2010) (*en banc*).

      1.   <u>Defendant Santos</u>

Plaintiff incorporates all of his allegations which allege that Defendant Santos violated his Fourth Amendment right against unreasonable searches when Defendant Santos ordered Plaintiff to disrobe, blinded him with pepper spray, attacked him with a MEB baton, dragged him out of the shower, beat, kicked, and stomped Plaintiff, applied cuffs on Plaintiff too tightly, stripped Plaintiff naked, and carried Plaintiff across the prison yard naked in the presence of the inmate and staff population.[4]  (ECF No. 47, at 18.)

However, the Court finds that Defendant Santos' body search of Plaintiff ended when Defendant Santos opened the shower gate and told Plaintiff to get down and cuff up.  (ECF No. 47, at 6.)  Therefore, Plaintiff has failed to allege a cognizable Fourth Amendment claim against Defendant Santos based on allegations that Defendant Santos blinded him with pepper spray, attacked him with a MEB baton, dragged him out of the shower, beat, kicked, and stomped Plaintiff, applied cuffs on Plaintiff too tightly, stripped Plaintiff naked, and carried Plaintiff across the prison yard naked in the presence of the inmate and staff population because the Fourth Amendment's protection against unreasonable searches is not applicable to any actions taken by Defendant Santos after the search ended.

To the extent Plaintiff's allegation is that Defendant Santos violated Plaintiff's Fourth Amendment right against unreasonable searches when Defendant Santos ordered Plaintiff to disrobe, the Fourth Amendment applies to the invasion of bodily privacy in prisons.  *Bull*, 595 F.3d at 974-75;

---

[4] In claim II, Plaintiff also alleges a sexual assault as part of his Fourth Amendment claim.  (ECF No. 47, p. 18.) This allegation is dealt with as part of the Eighth Amendment, *infra*.

*Michenfelder*, 860 F.2d at 333. Defendant's order for and requiring Plaintiff to disrobe does not state a cognizable claim. Similar strip searches have been held constitutionally permissible by the Ninth Circuit and Supreme Court. See, e.g., *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318 (2012); *Bull v. City & County of San Francisco*, 595 F.3d 964 (9th Cir. 2010) (en banc). "Shielding one's unclothed figure from the view of strangers, particularly strangers of the opposite sex is impelled by elementary self-respect and personal dignity." *Michenfelder*, 860 F.2d at 333.  However, the Ninth Circuit has held that occasional viewing of unclothed male prisoners by female correctional officers does not violate the Fourth Amendment rights of the inmates.  *Id.* at 334*; see also Grummett v. Rushen*, 779 F.2d 491, 494-95 (9th Cir. 1985).

Here, Plaintiff asserts that Defendant Santos approached the shower that Plaintiff was in and told Plaintiff to give his boxers to Defendant Santos as Defendant Espinoza, a female officer, entered the building, looking toward the shower and the search of Plaintiff.  However, Plaintiff's boxers were not removed until after Defendant Santos' body search of Plaintiff was over.  Therefore, Plaintiff has failed to allege a cognizable Fourth Amendment claim against Defendant Santos based on allegations that Defendant Santos ordered Plaintiff to take his boxers off while a female officer was able to view the body search.

2.  <u>Defendant Responder officers</u>

Plaintiff incorporates all of his allegations into the Fourth Amendment claim and thus, it is unclear what his allegations are.  Plaintiff appears to allege that Defendant Benavides, Bejinez, Deshazo, Espinoza, Hill, Kennedy, Leon, Lopez, Luna, Newton, Santos and Trinidad violated his Fourth Amendment right to unreasonable searches when they excessively pepper sprayed Plaintiff, jumped on his back, hit Plaintiff in the head and face, kicked Plaintiff's body, legs, and genitalia, applied cuffs too tightly, and when Defendant Salas snatched off Plaintiff's boxer shorts.  (ECF No. 47, at 17.)  Additionally, Plaintiff alleges that Defendants violated his Fourth Amendment right against unreasonable searches when they failed to intervene when Defendant Salas removed Plaintiff's boxer shorts, leaving him naked in the presence of female guards and medical staff, and when he was moved through the prison yard while still naked.

17

However, all of these allegations occurred after Defendant Santos' body search of Plaintiff ended.  Plaintiff cannot convert claims for excessive force and failure to intervene into Fourth Amendment violations.  Therefore, Plaintiff has failed to allege a cognizable Fourth Amendment claim against Defendants Benavides, Bejinez, Deshazo, Espinoza, Hill, Kennedy, Leon, Lopez, Luna, Newton, Santos and Trinidad.

### D.     Violation of First Amendment Free Exercise of Religion Clause

"The right to exercise religious practices and beliefs does not terminate at the prison door." *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (citing *O'Lone v. Shabazz*, 482 U.S. 342, and *Bell v. Wolfish*, 441 U.S. 520, 545 (1979).  The right to free exercise of religious faith is, however, 'necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *McElyea*, 833 F.2d at 197.  Federal courts "determine whether these competing interests are balanced properly by applying a 'reasonableness' test." Id.  Action by prison officials that impacts an inmate's right to free exercise of religion "is valid if it is reasonably related to legitimate penological interests." Id. (internal quotation marks omitted).

Defendants Salas, Bejinez, Trinidad, and Deshazo

Plaintiff alleges that, after he was cuffed at the wrists and ankles, placed in a stokes litter, and placed on a gurney, Defendant Salas "snatched" Plaintiff's boxer shorts off of his body and placed the pepper spray-soaked underwear over Plaintiff's face.  Nothing was placed over Plaintiff's genitalia in order to cover them.  Thus, at that point, Plaintiff was completely naked in front of Defendants Hansen, Liebold, Sharp, and Espinoza, and Jane doe counselor, all women.  Defendants Bejinez and Trinidad then wheeled Plaintiff on the gurney across the yard, still completely naked, in the presence of the inmate population, custody staff of both genders, and support services staff.  Plaintiff was placed, in the stokes litter, on the ground of the holding tank in the Facility B medical clinic, still naked.  Defendant Deshazo, the assigned medical triage coverage officer, did not cover up Plaintiff's genitalia at any time even though he opened the door to the medical clinic and let Inmate Homick, who was able to see Plaintiff lying naked on the floor, into the clinic.  (ECF No. 47, at 9-10.)  Plaintiff further alleges that these actions violated his First Amendment right to free exercise of religion, specifically his "right to modesty under the Islamic Beliefs."  (*Id.* at 21.)

The Court finds that, liberally construed, these allegations are sufficient to plead a cognizable claim for violations of Plaintiff's First Amendment right to free exercise of religion against Defendants Salas, Bejinez, Trinidad, and Deshazo.

**E.      Sexual Assault/Harassment**

"Sexual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment.  *See Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000) ('In the simplest and most absolute of terms … prisoners [have a clearly established Eighth Amendment right] to be free from sexual abuse ….'); *see also Women Prisoners of the Dist. of Columbia Dep't of Corr. v. District of Columbia*, 877 F. Supp. 634, 665 (D.D.C. 1994) ('[U]nsolicited touching of … prisoners' [genitalia] by prison employees are "simply not part of the penalty that criminal offenders pay for their offenses against society"' (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 … (1994))), aff'd in part and vacated in part, 93 F.3d 910 … (D.C. Cir. 1996)."  *Wood v. Beauclair*, 692 F.3d 1041, 1046 (9th Cir. 2012.)  "In evaluating a prisoner's claim, courts consider whether 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation."  *Id.*

In this case, Plaintiff alleges that Defendant Salas "Plaintiff's boxer shorts off his body, strangling Plaintiff's genitalia and ripping into his anus causing pain." (ECF No. 47, at 18.)

However, to the extent that Plaintiff's allegation that Defendant Salas "snatched off" Plaintiff's boxer shorts, abusing Plaintiff's genitalia, meaning that Defendant Salas actually touched Plaintiff's genitalia, Plaintiff has failed to allege that any touch to his genitalia was more than brief.  *Berryhill v. Schriro*, 137 F.3d 1073 (8th Cir. 1998) (stating a prisoner plaintiff failed to establish a sexual assault claim where two brief touches to an inmate's buttocks, unaccompanied by any sexual comments or banter, lasted only seconds and the inmate thought that the defendants were trying to embarrass him, not rape him). A viable sexual assault claim is established if the inmate can prove that a prison staff member, acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner. *Bearchild v. Cobban*, 947 F.3d 1130, 1144 (9th Cir. 2020).  Plaintiff alleges that he was being searched and was

19

ordered to remove his boxers, which he delayed because of the presence of women.  Plaintiff does not

allege he was touched in a sexual manner, but that the boxers were removed in a manner which caused

pain.  Plaintiff has failed to allege that the defendant had knowledge that the manner of removing the

boxers would cause Plaintiff harm or that Defendant intended to harm Plaintiff. Accordingly, even

though Plaintiff has concluded that removal of his boxers was painful, he has not stated facts sufficient

to show that he suffered sexual abuse sufficient to rise to the level of an Eighth Amendment violation,

Therefore, Plaintiff has not pled a cognizable claim for sexual assault against any named Defendant.

### F.    Conditions of Confinement

The Eighth Amendment protects prisoners from inhumane methods of punishment and from

inhumane conditions of confinement.  *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006).

Prison officials therefore have a "duty to ensure that prisoners are provided adequate shelter, food,

clothing, sanitation, medical care, and personal safety."  *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir.

2000) (citations omitted).  "Although the routine discomfort inherent in the prison setting is

inadequate to satisfy the objective prong of an Eighth Amendment inquiry, 'those deprivations

denying "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of

an Eighth Amendment violation.'"  *Id.*; *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  "The

circumstances, nature, and duration of a deprivation of these necessities must be considered in

determining whether a constitutional violation has occurred."  *Id.*

"A prisoner claiming an Eighth Amendment violation must show (1) that the deprivation he

suffered was 'objectively, sufficiently serious'; and (2) that prison officials were deliberately

indifferent to his [health or] safety in allowing the deprivation to take place."  *Morgan*, 465 F.3d at

1045.  Thus, a prison official may be held liable under the Eighth Amendment for denying humane

conditions of confinement only if the official knows that the plaintiff faced a substantial risk of harm

and disregarded that risk by failing to take reasonable measures to abate it.  *Farmer v. Brennan*, 511

U.S. 825, 837-45 (1994).  Delays in providing showers and medical attention for inmates suffering

from harmful effects of pepper spray may violate the Eighth Amendment.  *Clement v. Gomez*, 298

F.3d 898, 905-06 (9th Cir. 2002).

Plaintiff alleges that he was thoroughly sprayed with pepper spray during an incident with various named Defendants.  When Plaintiff arrived at the Facility B medical clinic, Defendant Deshazo refused to summon medical staff to provide treatment, as Plaintiff was screaming in pain, hyperventilating, coughing, and sweating.  Instead, Defendant Deshazo placed a spit mask hood over Plaintiff's head even though Plaintiff was showing apparent signs of respiratory distress.  While Plaintiff wore the spit mask hood, Plaintiff was choking, gagging for air, hyperventilating, sweating, mucous was sticking to the spit hood, which clogged up the mask and caused Plaintiff to partially suffocate and fight for air, and he was in and out of consciousness.  Defendant Deshazo disregarded Plaintiff's pleas for help, even though the Defendant was within ten feet of Plaintiff.

After Defendants Bejinez and Trinidad had a conversation with Defendant Benavides, Defendants Bejinez and Trinidad wheeled Plaintiff across the yard to the gym for decontamination. Defendants Bejinez and Trinidad removed the spit mask hood.  After one of the officers stated that the showers were not working, Defendants Bejinez and Trinidad left Plaintiff lying in the stokes litter on the gurney, and sat down and had a personal conversation.  Defendant Benavides entered the gym, told Defendants Bejinez and Trinidad to remove the cuffs, take Plaintiff out of the stokes litter, and place him on the bench.  After placing Plaintiff on the bench, Defendants Bejinez and Trinidad just sat and resumed their conversation.  Another prison official entered the gym and twice poured water from a bucket over Plaintiff's head, but refused to pour a third bucket of water over Plaintiff after Plaintiff requested the official do so.  After that, Defendant Benavides told Defendants Bejinez and Trinidad to take Plaintiff to administrative segregation and Defendants Bejinez and Trinidad did so.  Plaintiff alleges that he continued to feel burning from the pepper spray in his eyes and on his body for a few days until he was able to take a shower.

The Court finds that, liberally construed, these allegations are sufficient to state a cognizable claim for unconstitutional conditions of confinement against Defendants Deshazo, Bejinez, Trinidad, and Benavides.

### G.    Deliberate Indifference to Serious Medical Needs

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to

an inmate's serious medical needs. *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds by *Peralta v. Dillard*, 744 F.3d 1076, 1082–83 (9th Cir. 2014); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).  The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent."  *Jett*, 439 F.3d at 1096 (citation omitted).

A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care.  *Snow*, 681 F.3d at 985.  Deliberate indifference may be shown by the denial, delay, or intentional interference with medical treatment or by the way in which medical care is provided. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).  "Deliberate indifference is a high legal standard," *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1019 (9th Cir. 2010*); Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm.  *Jett*, 439 F.3d 1096.  In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105–06).)

Plaintiff alleges that he was thoroughly pepper sprayed, kicked, punched, and stomped during an incident with various Defendants.  After the incident was over and Plaintiff was cuffed, Defendant Hoggard brought a gurney.  Plaintiff was placed on the gurney and taken to the Facility B medical clinic.  At the medical clinic, Defendant Deshazo was within ten feet of Plaintiff and disregarded Plaintiff's pleas for help even though he witnessed Plaintiff screaming in pain, hyperventilating, coughing, sweating, choking, fighting for air through a spit hood mask, and drifting in and out of consciousness.  After Defendants Bejinez and Trinidad took Plaintiff to the gym for pepper spray decontamination, one of the two Defendants stated that the showers were not working and then

ignored Plaintiff.  Plaintiff needed assistance to put on a pair of boxer shorts.  Also, Defendants Bejinez and Trinidad had to carry Plaintiff into the administrative segregation unit.  Then, four hours after Plaintiff was taken to administrative segregation, Plaintiff was found unresponsive in his cell by an administrative segregation unit officer.

The Court finds that, liberally construed, Plaintiff's allegations state a cognizable claim for deliberate indifference to serious medical needs against Defendants Bejinez, Deshazo, and Trinidad.

However, Plaintiff has not pled a cognizable claim for deliberate indifference to serious medical needs against Defendants Benavides and Hoggard because Plaintiff has not alleged facts demonstrating that each of those Defendants knew of and disregarded Plaintiff's physical distress and requests for medical attention. Plaintiff does not allege that Benavides witnessed Plaintiff not being able to hold up himself up and that Plaintiff could not support himself with his injured arm, wrist, knees, or leg. Indeed, Plaintiff alleges Defendant Benavides was at the Fac. B. Medical entrance when Plaintiff was wheeled there for medical care.  (ECF No. 47, at 11.)  Plaintiff fails to state a cognizable claim against Defendant Hoggard in that he alleges that Defendant Hoggard then entered the gym, stopped approximately ten feet away from Plaintiff, wrote something down on a piece of paper, and exited the gym.  Hoggard returned, but when he did so Defendant Benavides instructed that Plaintiff was to take Plaintiff to ad-seg.  Indeed, Plaintiff alleges that Defendant Hoggard's CDCR 7219 Injury/Assessment Medical Report of Injuries only indicated that Plaintiff had a scratch/abrasion on his left knee and O.C. pepper spray on his torso. While plaintiff alleges the report "diminished" his injuries, this allegation is insufficient to show that Hoggard knew of and disregarded an excessive risk to inmate health or safety.  Mere differences of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim. See *Toguchi*, 391 F.3d at 1058

## H.   Conspiracy

Plaintiff may be seeking to allege a conspiracy.  To establish a cognizable claim for conspiracy under 42 U.S.C. § 1983, a plaintiff must allege (1) the existence of an express or implied agreement among the defendants to deprive the plaintiff of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement.  *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010).  To

establish a conspiracy, Plaintiff allege specific facts showing "an agreement or meeting of the minds to violate constitutional rights.  To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (internal citations and quotation marks omitted). The mere conclusory statement that defendants "conspired" together is not sufficient to state a cognizable claim.  *Woodrum v. Woodward Cnty*., 866 F.2d 1121, 1126 (9th Cir. 1989).

Here, Plaintiff alleges that Defendants Benavides and Hoggard had an "orchestrated plan of action" to minimize Plaintiff's documented injuries in order to isolate Plaintiff in administrative up a serious investigation into excessive force and completion of an excessive force video deposition. However, Plaintiff has failed to allege any specific facts establishing that Defendants Benavides and Hoggard expressly or impliedly agreed together to deprive Plaintiff of his constitutional right to medical care.  Plaintiff's conclusory allegations are insufficient.  Therefore, Plaintiff has not pled a cognizable conspiracy claim against Defendants Benavides and Hoggard.

### I.       State Regulations

Plaintiff alleges violations of various prison regulations by various defendants.  However,  § 1983 only provides a cause of action for the deprivation of federally protected rights.  "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, [s]ection 1983 offers no redress."  *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997) (quoting *Lovell v. Poway Unified Sch. Dist*., 90 F.3d 367, 370 (9th Cir. 1996)); *see Davis v. Kissinger*, No. CIV S–04–0878-GEB-DAD-P, 2009 WL 256574, at *12 n. 4 (E.D. Cal. Feb. 3, 2009).  Nor is there any liability under § 1983 for violating prison policy.  *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (quoting *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997)).  Thus, the violation of any state law or regulation that reaches beyond the rights protected by the federal Constitution and/or the violation of any prison regulation, rule or policy does not amount to a cognizable claim under federal law, nor does it amount to any independent cause of action under § 1983.

### J.       Declaratory Relief

Plaintiff's complaint seeks a declaratory judgment.  "A declaratory judgment, like other forms

of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." *Eccles v. Peoples Bank of Lakewood Village*, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985).

If this action reaches trial and the jury returns a verdict in favor of Plaintiff, then that verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that any named Defendant violated Plaintiff's rights is unnecessary.

IV.     **Conclusions and Recommendations**

IT IS HEREBY RECOMMENDED THAT:

1. Based on the foregoing, the Court find that Plaintiff has stated cognizable claims as follows: (1) for excessive force against Defendants Correctional Officer M. Santos, Correctional Officer W. Leon, Correctional Sergeant J. Benavides, Correctional Officer J. Hill, Correctional Officer A. Salas, Correctional Officer G. Luna, Correctional Officer S. Lopez, Correctional Officer C. Kennedy, Correctional Officer J. Bejinez, and Correctional Officer E. Trinidad, (2) for violation of Plaintiff's First Amendment right to free exercise of religion against Defendants Correctional Officer A. Salas, Correctional Officer J. Bejinez, Correctional Officer E. Trinidad, and Correctional Officer S. Deshazo, (3) for unconstitutional conditions of confinement against Defendants Correctional Officer S. Deshazo, Correctional Officer J. Bejinez, Correctional Officer E. Trinidad, and Correctional Sergeant J. Benavides, (4) for deliberate indifference to serious medical needs against Defendants Correctional Officer J. Bejinez, Correctional Officer S. Deshazo, and Correctional Officer E. Trinidad, and (5) for failure to intervene against Correctional Officer S. Espinoza, Correctional Officer G. Luna, and Correctional Officer R. Newton.

2. However, Plaintiff's complaint fails to state any other cognizable claims for relief. Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the remaining deficiencies and further leave to amend is not warranted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

3.  All other claims and defendants be dismissed, with prejudice, based on Plaintiff's failure to state claims upon which relief may be granted.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   **November 10, 2021**            /s/ *Barbara A. McAuliffe*
                                          UNITED STATES MAGISTRATE JUDGE

26